274 F.3d 65 (2nd Cir. 2001)
 HAIDEE IRAGORRI, individually and as ancillary administratrix of the estate of Mauricio Iragorri, Patricia Iragorri and Maurice Iragorri, Plaintiffs-Appellants,
v.
UNITED TECHNOLOGIES CORPORATION AND OTIS ELEVATOR COMPANY, Defendants-Appellees.
 No. 99-7481
 UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
 Argued: June 6, 2001
Decided: December 4, 2001
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 ANTHONY J. NATALE, Pepe & Hazard LLP, Hartford, CT (Richard F. Wareing on the brief), for Plaintiffs-Appellants.
 ALLAN B. TAYLOR, Day, Berry & Howard LLP, Hartford, CT (Edward W. Mayer, Jr., and Patrick Noonan, Delaney, Zemetis, Donahue, Durham & Noonan, P.C., Wallingford, CT, on the brief), for Defendants-Appellees.
 Rory O. Millson and Rowan D. Wilson, Cravath, Swaine & Moore, New York, NY, on the brief for Amici Curiae Royal Dutch Petroleum Company and the "Shell" Transport and Trading Company, p.l.c.
 Before: WALKER, Chief Judge, KEARSE, JACOBS, LEVAL, CALABRESI, CABRANES, F. I. PARKER, STRAUB, POOLER, SACK, SOTOMAYOR, and KATZMANN, Circuit Judges.
 LEVAL and JOSE A. CABRANES, Circuit Judges.
 
 
 1
 Our court convened this rehearing en banc not out of dissatisfaction with the panel's disposition, Iragorri v. Int'l Elevator, Inc., 243 F.3d 678 (2d Cir. 2001) (per curiam), but because we believed that it would be useful for the full court to review the relevance of a plaintiff's residence in the United States but outside the district in which an action is filed when the defendants seek dismissal for forum non conveniens, especially in light of our court's recent decisions in Guidi v. Inter-Continental Hotels Corp., 224 F.3d 142 (2d Cir. 2000), Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88 (2d Cir. 2000), and DiRienzo v. Philip Services Corp., 232 F.3d 49 (2d Cir. 2000).[1] The en banc order states that we convene to answer the question common to those decisions and the instant case, namely, "what degree of deference should the district court accord to a United States plaintiff's choice of a United States forum where that forum is different from the one in which the plaintiff resides." Iragorri v. United Techs. Corp., 243 F.3d 678, No. 99-7481, at 1-2 (2d Cir. Mar. 22, 2001) (order granting rehearing en banc).[2]
 
 Background
 
 2
 On October 3, 1992, Mauricio Iragorri -- a domiciliary of Florida since 1981 and a naturalized United States citizen since 1989 -- fell five floors to his death down an open elevator shaft in the apartment building where his mother resided in Cali, Colombia. Mauricio left behind his widow, Haidee, and their two teenaged children, Patricia and Maurice, all of whom are the plaintiffs in this action. The plaintiffs have been domiciliaries of Florida since 1981. At the time of the accident, however, Haidee and the two children were living temporarily in Bogota, Colombia, because the children were attending a Bogota school as part of an educational exchange program sponsored by their Florida high school. Iragorri, 243 F.3d at 679-80; (Iragorri-Smith Aff. P 3).
 
 
 3
 The Iragorris brought suit in the United States District Court for the District of Connecticut (Arterton, J.) on September 30, 1994. The named defendants were Otis Elevator Company ("Otis"), a New Jersey corporation with its principal place of business in Connecticut; United Technologies Corporation ("United") -- the parent of Otis -- a Delaware corporation whose principal place of business is also in Connecticut; and International Elevator, Inc. ("International"), a Maine corporation, which since 1988 had done business solely in South America. It is alleged that prior to the accident, an employee of International had negligently wedged open the elevator door with a screwdriver to perform service on the elevator, thereby leaving the shaft exposed and unprotected.
 
 
 4
 The complaint alleged two theories of liability against defendants Otis and United: that (a) International acted as an agent for Otis and United so that the negligent acts of its employee should be imputed to them, and (b) Otis and United were liable under Connecticut's products liability statute for the defective design and manufacture of the elevator which was sold and installed by their affiliate, Otis of Brazil.
 
 
 5
 On February 12, 1998, the claims against International Elevator were transferred by Judge Arterton to the United States District Court for the District of Maine. That district court then dismissed the case against International Elevator on forum non conveniens grounds, and the First Circuit affirmed. Iragorri v. Int'l Elevator, Inc., 203 F.3d 8 (1st Cir. 2000).
 
 
 6
 Defendants Otis and United meanwhile moved to dismiss under forum non conveniens, arguing that plaintiffs' suit should be brought in Cali, Colombia, where the accident occurred. On March 31, 1999, Judge Arterton granted the motion and dismissed the claims against Otis and United on the condition that they agree to appear in the courts of Cali. Iragorri v. United Techs. Corp., 46 F. Supp. 2d 159 (D. Conn. 1999).
 
 
 7
 A panel of this Court vacated and remanded to the District Court for reconsideration in light of our recent decisions on forum non conveniens. Iragorri, 243 F.3d at 680-81. Nearly simultaneously, this Court issued the order to hear the case en banc.
 
 Discussion
 
 8
 I. The Degree of Deference Accorded to Plaintiff's Choice of Forum
 
 
 9
 The United States Supreme Court authorities establish various general propositions about forum non conveniens. We are told that courts should give deference to a plaintiff's choice of forum. "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839 (1947). We understand this to mean that a court reviewing a motion to dismiss for forum non conveniens should begin with the assumption that the plaintiff's choice of forum will stand unless the defendant meets the burden of demonstrating the points outlined below.
 
 
 10
 At the same time, we are led to understand that this deference is not dispositive and that it may be overcome. Notwithstanding the deference, "dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256 n.23, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981).
 
 
 11
 We are instructed that the degree of deference given to a plaintiff's forum choice varies with the circumstances. We are told that plaintiff's choice of forum is generally entitled to great deference when the plaintiff has sued in the plaintiff's home forum. Koster v. (Am.) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524, 91 L. Ed. 1067, 67 S. Ct. 828 (1947); see also Piper, 454 U.S. at 255-56, 256 n.23. But we are also instructed that the choice of a United States forum by a foreign plaintiff is entitled to less deference. Piper, 454 U.S. at 255-56 ("The District Court's distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified. . . .When the plaintiff is foreign, . . . [the] assumption [favoring the plaintiff's choice of forum] is much less reasonable.").
 
 
 12
 In our recent cases on the subject of forum non conveniens, our Court has faced situations involving a fact pattern not directly addressed by the Supreme Court: a United States resident plaintiff's suit in a U.S. district other than that in which the plaintiff resides. As a full court, we now undertake to apply to this general fact pattern the principles that we find implicit in Supreme Court precedents.
 
 
 13
 We regard the Supreme Court's instructions that (1) a plaintiff's choice of her home forum should be given great deference, while (2) a foreign resident's choice of a U.S. forum should receive less consideration, as representing consistent applications of a broader principle under which the degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on several relevant considerations.
 
 
 14
 The Supreme Court explained in Piper that the reason we give deference to a plaintiff's choice of her home forum is because it is presumed to be convenient: "When the home forum has been chosen, it is reasonable to assume that this choice is convenient." Id. at 255-56. In contrast, when a foreign plaintiff chooses a U.S. forum, it "is much less reasonable" to presume that the choice was made for convenience. Id. at 256. In such circumstances, a plausible likelihood exists that the selection was made for forum-shopping reasons, such as the perception that United States courts award higher damages than are common in other countries. Even if the U.S. district was not chosen for such forum-shopping reasons, there is nonetheless little reason to assume that it is convenient for a foreign plaintiff.
 
 
 15
 Based on the Supreme Court's guidance, our understanding of how courts should address the degree of deference to be given to a plaintiff's choice of a U.S. forum is essentially as follows: The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice. Stated differently, the greater the plaintiff's or the lawsuit's bona fide connection[3] to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for forum non conveniens.[4] Thus, factors that argue against forum non conveniens dismissal include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense. On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons -- such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum -- the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a forum non conveniens motion by showing that convenience would be better served by litigating in another country's courts.
 
 
 16
 The decision to dismiss a case on forum non conveniens grounds "lies wholly within the broad discretion of the district court and may be overturned only when we believe that discretion has been clearly abused." Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 81 F.3d 1224, 1232 (2d Cir. 1996) (emphasis added). In other words, "our limited review . . . encompasses the right to determine whether the district court reached an erroneous conclusion on either the facts or the law," Guidi, 224 F.3d at 145 (internal quotation marks omitted); Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC, 155 F.3d 603, 609 (2d Cir. 1998) ("Our review of a forum non conveniens dismissal is extremely limited." (emphasis added)), or relied on an incorrect rule of law in reaching its determination, Wiwa, 226 F.3d at 103. Accordingly, we do not, on appeal, undertake our own de novo review, simply substituting our view of the matter for that of the district court. Nonetheless, the district court must follow the governing legal standards. In our recent cases, we vacated dismissals for forum non conveniens because we believed that the district courts had misapplied the basic rules, apparently assuming that deference is given to the plaintiff's choice of forum only when the plaintiff sues in the plaintiff's home district.
 
 
 17
 The rule is not so abrupt or arbitrary. One of the factors that necessarily affects a plaintiff's choice of forum is the need to sue in a place where the defendant is amenable to suit. Consider for example a hypothetical plaintiff residing in New Jersey, who brought suit in the Southern District of New York, barely an hour's drive from the plaintiff's residence, because the defendant was amenable to suit in the Southern District but not in New Jersey. It would make little sense to withhold deference for the plaintiff's choice merely because she did not sue in her home district. Where a U.S. resident leaves her home district to sue the defendant where the defendant has established itself and is thus amenable to suit, this would not ordinarily indicate a choice motivated by desire to impose tactical disadvantage on the defendant. This is all the more true where the defendant's amenability to suit in the plaintiff's home district is unclear. A plaintiff should not be compelled to mount a suit in a district where she cannot be sure of perfecting jurisdiction over the defendant, if by moving to another district, she can be confident of bringing the defendant before the court. In many circumstances, it will be far more convenient for a U.S. resident plaintiff to sue in a U.S. court than in a foreign country, even though it is not the district in which the plaintiff resides.[5] It is not a correct understanding of the rule to accord deference only when the suit is brought in the plaintiff's home district. Rather, the court must consider a plaintiff's likely motivations in light of all the relevant indications. We thus understand the Supreme Court's teachings on the deference due to plaintiff's forum choice as instructing that we give greater deference to a plaintiff's forum choice to the extent that it was motivated by legitimate reasons, including the plaintiff's convenience and the ability of a U.S. resident plaintiff to obtain jurisdiction over the defendant, and diminishing deference to a plaintiff's forum choice to the extent that it was motivated by tactical advantage.
 
 II. The Assessment of Conveniences
 
 18
 The deference given to a plaintiff's choice of forum does not dispose of a forum non conveniens motion. It is only the first level of inquiry. Even after determining whether the plaintiff's choice is entitled to more or less deference, a district court must still conduct the analysis set out in Gilbert, Koster, and Piper.[6] Initially, the court must consider whether an adequate alternative forum exists. If so, it must balance two sets of factors to ascertain whether the case should be adjudicated in the plaintiff's chosen forum or in the alternative forum proposed by the defendant. The first set of factors considered are the private interest factors--the convenience of the litigants. These include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Gilbert, 330 U.S. at 508. In considering these factors, the court is necessarily engaged in a comparison between the hardships defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as the result of dismissal and the obligation to bring suit in another country. Rather than simply characterizing the case as one in negligence, contract, or some other area of law, the court should focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues. In a suit alleging negligence, for example, the court might reach different results depending on whether the alleged negligence lay in the conduct of actors at the scene of the accident, or in the design or manufacture of equipment at a plant distant from the scene of the accident. The court should consider also whether the plaintiff's damages are genuinely in dispute and where the parties will have better access to the evidence relating to those damages.
 
 
 19
 The court also considers public interest factors. As the Supreme Court has explained:
 
 
 20
 Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.
 
 
 21
 Id. 508-09, 67 S.Ct. 839.
 
 
 22
 Thus, while plaintiff's citizenship and residence can serve as a proxy for, or indication of, convenience, neither the plaintiff's citizenship nor residence, nor the degree of deference given to her choice of forum, necessarily controls the outcome. Alcoa S.S. Co., Inc., v. M/V Nordic Regent, 654 F.2d 147, 152, 154 (2d Cir. 1980) (en banc) (observing that "American citizenship alone is not a barrier to dismissal on the ground of forum non conveniens") (summarizing the trend as "away from according a talismanic significance to the citizenship or residence of the parties"). There is no "rigid rule of decision protecting U.S. citizen or resident plaintiffs from dismissal for forum non conveniens." Wiwa, 226 F.3d at 102.
 
 
 23
 As is implicit in the meaning of "deference," the greater the degree of deference to which the plaintiff's choice of forum is entitled, the stronger a showing of inconvenience the defendant must make to prevail in securing forum non conveniens dismissal. At the same time, a lesser degree of deference to the plaintiff's choice bolsters the defendant's case but does not guarantee dismissal. A defendant does not carry the day simply by showing the existence of an adequate alternative forum. The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable. In considering this point, the court furthermore must balance the greater convenience to the defendant of litigating in its preferred forum against any greater inconvenience to the plaintiff if the plaintiff is required to institute the suit in the defendant's preferred foreign jurisdiction.
 
 
 24
 Courts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of forum non conveniens not because of genuine concern with convenience but because of similar forum-shopping reasons. District courts should therefore arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum. And the greater the degree to which the plaintiff has chosen a forum where the defendant's witnesses and evidence are to be found, the harder it should be for the defendant to demonstrate inconvenience.
 
 
 25
 III. The Application of the Principles to the Facts of This Case
 
 
 26
 We believe that the District Court in the case before us, lacking the benefit of our most recent opinions concerning forum non conveniens, did not accord appropriate deference to the plaintiff's chosen forum. Although the plaintiffs had resided temporarily in Bogota at the time of Mauricio Iragorri's accident, it appears that they had returned to their permanent, long-time domicile in Florida by the time the suit was filed. The fact that the children and their mother had spent a few school terms in Colombia on a foreign exchange program seems to us to present little reason for discrediting the bona fides of their choice of the Connecticut forum. Heightened deference to the plaintiffs' chosen forum usually applies even where a plaintiff has temporarily or intermittently resided in the foreign jurisdiction. So far as the record reveals, there is little indication that the plaintiffs chose the defendants' principal place of business for forum-shopping reasons. Plaintiffs were apparently unable to obtain jurisdiction in Florida over the original third defendant, International, but could obtain jurisdiction over all three in Connecticut. It appears furthermore that witnesses and documentary evidence relevant to plaintiffs' defective design theory are to be found at the defendants' installations in Connecticut. As we have explained, "live testimony of key witnesses is necessary so that the trier of fact can assess the witnesses' demeanor." Alfadda v. Fenn, 159 F.3d 41, 48 (2d Cir. 1998) (internal quotation marks omitted); Scottish Air Int'l, 81 F.3d at 1233 (live witness testimony crucial for jury to assess witness credibility, notwithstanding possibility of deposition). Also, in assessing where the greater convenience lies, the District Court must of course consider how great would be the inconvenience and difficulty imposed on the plaintiffs were they forced to litigate in Cali. Among other factors, plaintiffs claim that they fear for their safety in Cali and that various witnesses on both sides may be unwilling to travel to Cali; if these concerns are warranted, they appear highly relevant to the balancing inquiry that the District Court must conduct.
 
 
 27
 Accordingly, we remand for reconsideration in light of the principles here discussed. The District Court should determine the degree of deference to which plaintiffs' choice is entitled, the balance of hardships to the respective parties as between the competing fora, and the public interest factors involved. The District Court's decision, if appealed, would be reviewable under the clear-abuse-of-discretion standard that we have enunciated. Guidi, 224 F.3d at 145; Scottish Air Int'l, 81 F.3d at 1232.
 
 Conclusion
 
 28
 The judgment of the District Court is hereby VACATED and the case REMANDED for further proceedings.
 
 
 
 Notes:
 
 
 [1]
 A petition to rehear DiRienzo is pending before this Court.
 
 
 [2]
 We invited the United States Attorney General to file an amicus curiae brief on the central issue in this case--that is, the degree of deference that a district court should accord to a United States plaintiff's choice of a United States forum where that forum is different from the one in which the plaintiff resides. We noted that we were particularly "interested to learn the views of the State Department and the Office of the Solicitor General regarding how, if at all, the question presented is affected by treaty obligations of the United States, including any treaty obligations concerning reciprocal access to courts by nationals of other countries." Iragorri v. United Techs. Corp., No. 99-7481, at 2 (2d Cir. Mar. 22, 2001) (order granting rehearing en banc). After consulting with the offices named, as well as the Securities and Exchange Commission, the Department of Justice ("DOJ") responded by letter for all, declining to contribute to consideration of the central question, as it "is not one that arises with any frequency in litigation to which the United States or one of its officers or instrumentalities is a party, or one that directly implicates governmental interests . . . ." (Letter from Att'y Michael J. Singer, Appellate Staff, Civil Div., U.S. Dep't of Justice, to Roseann B. MacKechnie, Clerk of Court, of 5/15/01, at 1.) In any event, the DOJ anticipated that the pertinent analysis "might . . . be materially different in a case involving a sovereign party or sovereign interests" and, therefore, preferred to "consider and address any such differences if and when they arise in concrete factual contexts." (Id. at 1-2.) However, the DOJ did comment in its letter on the Court's inquiry concerning "how the question presented might be affected by U.S. treaty obligations, including those affording access to U.S. courts." (Id. at 2.)
 The DOJ began by acknowledging that "the United States is a party to a number of treaties that include various obligations regarding access to courts, including in some treaties an obligation to grant 'national treatment,'" generally meaning that "nationals of the other party to the treaty are entitled to access to U.S. courts on terms no less favorable that those enjoyed by U.S. nationals 'in like situations.'" (Id. at 2 (citing Sumitomo Shoji America, Inc. v. Avagliano, 457 U.S. 176, 188 & n.18, 72 L. Ed. 2d 765, 102 S. Ct. 2374 (1981)).) The DOJ then articulated three points that it believed pertinent to our framing of standards for forum non conveniens analysis. First, the DOJ noted that "the Supreme Court has already made clear that the fact that the plaintiff is a citizen or resident of the United States is relevant but not dispositive in a forum non conveniens analysis." (Id. at 2 (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 n.23, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981)).) Second, the DOJ observed that "any right to court access afforded to a foreign national plaintiff by treaty will generally be only a right to the same access that would be accorded to a U.S. national plaintiff who is otherwise similarly situated." (Id. at 2.) Third, the DOJ posited that "even if citizenship or nationality per se were held to be dispositive in otherwise evenly balanced cases, and even if national treatment provisions were interpreted under some circumstances to require that the same tie-breaking rule be applied in favor of those non-national plaintiffs who are entitled to the benefit of treaties that include such provisions, . . . it is not obvious that applying such provisions in that way would necessarily be either unworkable or inappropriate." (Id. at 2-3.)
 Though the instant case does not implicate any treaty obligations, the forum non conveniens analysis that we articulate here is mindful of those considerations.
 
 
 [3]
 If a plaintiff has adopted a U.S. residence for the purpose of having his suit tried in a U.S. court, the same deference would not apply.
 
 
 [4]
 Where good reasons support conducting the litigation in the United States, but another U.S. district is markedly more convenient than the plaintiff's chosen forum, it will often be preferable "for the convenience of parties and witnesses, in the interest of justice" to transfer venue under 28 U.S.C. 1404(a), rather than dismissing the case for forum non conveniens.
 
 
 [5]
 In Guidi, the plaintiffs were U.S. citizens who were also U.S. residents. Guidi, 224 F.3d at 144. When Guidi spoke of the deference due to the choice of forum by U.S. "citizens", we understand those references to signify citizens who were also U.S. residents, rather than situations in which an expatriate U.S. citizen residing permanently in a foreign country brings suit in the United States. See id. at 146-48. As to such suits, it would be less reasonable to assume the choice of forum is based on convenience.
 
 
 [6]
 As we have previously recognized, Koster does not establish a separate standard from Gilbert for forum non conveniens dismissals. Alcoa S.S. Co., Inc. v. M/V Nordic Regent, 654 F.2d 147, 152 (2d Cir. 1980) (en banc) ("In short, we believe that Koster should be read as a consistent, pragmatic application of Gilbert, rather than an exception to it."). Koster and Gilbert were decided on the same day, and did not explicitly state that one established a stricter standard than the other, which mitigates against any reading of them as establishing separate standards. Moreover, in Piper, the Supreme Court characterized Gilbert and Koster as establishing a single balancing test for forum non conveniens, with the rebuttable presumption that a plaintiff's choice of forum would not be disturbed. Piper, 454 U.S. at 241.