BASE METAL TRADING LTD; Mikom; Davis International, LLC; Holdex, LLC; Foston Management, Ltd; Omni Trusthouse, Ltd; Nexis Products, LLC; and Polyprom, Ltd, Plaintiffs–Appellants,

Base Metal Trading, S.A.; Alucoal Holdings Ltd., Plaintiffs,

v.

RUSSIAN ALUMINUM; Rual Trade Ltd; Sibirsky Aluminum Products USA Corp. a/k/a Sibirsky Aluminum (US); Sibirsky Aluminum (Russia); Bauxal Management, SA; Metcare Management, SA; Unimetal Limited, SA; Oleg Deripaska; Mikhail Chernoi; Blonde Management, Inc.; Blonde Investments, Corp.; Pan–American Corp.; Arnold Kislin; Iskander Makhmudov; Moskovskiy Delovoi Mir Bank; Novokuznetsk Aluminum Zavod; New Start Group Corp.; Venitom Corp.; Unidale LLC; and Investland, LLC, Defendants–Appellees.

No. 03–7466.

United States Court of Appeals, Second Circuit.

April 30, 2004.

James Bernard, Stroock, Stroock & Lavan, LLP, New York, NY, for Appellants Base Metal Trading Ltd. and Mikom, of counsel.

Bruce Marks, Marks & Sokolov, LLC, Philadelphia, PA, for Appellants Davis International, LLC; Holdex, LLC; Foston Management, Ltd.; Omni Trusthouse, Ltd.; Nexis Products, LLC; and Polyprom, Ltd.

Michael D. Burrows, Winston & Strawn, New York, NY, for Appellees.

PRESENT: JACOBS, B.D. PARKER, Circuit Judges, and BLOCK,* District Judge.

### SUMMARY ORDER

Plaintiffs–Appellants Base Metal Trading, Ltd., Mikom (together, "Aluminum plaintiffs"), Davis International, LLC, Holdex, LLC, Foston Management, Ltd., Omni Trusthouse, Ltd., Nexis Products, LLC, and Polyprom, Ltd. (together, "Vanadium plaintiffs"), appeal from a judg-

---

* The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

ment of the United States District court for the Southern District of New York dismissing their claims on the ground of *forum non conveniens.* Appellants' claims (civil RICO, contract, and tortious interference) arise primarily from the allegedly illegal takeovers of aluminum and vanadium production facilities located in Western Siberia and the Northern Ural Mountains, respectively. It is alleged that the takeovers were accomplished through sham bankruptcy proceedings initiated by the defendant-appellees ("defendants") in Russia. Familiarity is assumed as to the facts, procedural context, and the specification of appellate issues. We affirm for substantially the reasons articulated by the district court.

A decision to dismiss an action on the ground of *forum non conveniens* is committed to the sound discretion of the district court; our review is limited to addressing clear abuses of that discretion. *Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64, 70 (2d Cir.2003). In *forum non conveniens* cases, "discretion is abused ... when a decision (1) rests either on an error of law or on a clearly erroneous finding of fact, or (2) cannot be located within the range of permissible decisions," or (3) fails to consider all the relevant factors or unreasonably balances those factors. *Id.* (citations omitted).

A ruling on such a motion proceeds in three steps; the district court must: (i) determine the degree of deference to be accorded the plaintiff's choice of forum; (ii) determine whether an adequate alternative forum to entertain plaintiff's claims exists; and (iii) balance the private and public interest factors identified by the Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), to determine where the plaintiff's claims ought to be adjudicated. *See Pollux,* 329 F.3d at 70 (discussing

*Iragorri v. United Technologies Corp.,* 274 F.3d 65 (2001) (in banc)). In making these determinations, the district court is free to consider submissions by the parties without converting a *forum non conveniens* motion into a motion for summary judgment. *See Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633, 645 (2d Cir.1956) (citing *Koster v. (American) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 531–32, 67 S.Ct. 828, 91 L.Ed. 1067 (1947)) ("[I]n the determination of a motion to dismiss for *forum non conveniens,* the court may consider affidavits submitted by the moving and opposing parties.").

■ 1. With respect to choice of forum, the district court considered the relevant factors and concluded that plaintiffs' decision to litigate in the Southern District of New York was entitled to "little deference." *Base Metal Trading, S.A. v. Russian Aluminum,* 253 F.Supp.2d 681, 694 (S.D.N.Y.2003); *see generally, id.* at 693–98. None of the Aluminum plaintiffs are United States citizens or residents; of the six Vanadium plaintiffs, three are owned by holding companies that are registered in the United States, though no two are in the same state, and none is in the Southern District of New York. Based on extensive submissions by plaintiffs and defendants, Judge Koeltl concluded that "the record ... point[ed] to nothing but forum shopping by the plaintiffs." *Base Metal Trading,* 253 F.Supp.2d at 696–97. The court's conclusion was certainly not a clear abuse of discretion.

■ 2. "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux,* 329 F.3d at 75. In practice, this issue entails three inquiries. Is the defendant amenable to process in the alternative forum? Is the plaintiff able to have his claims adjudicated fairly (*i.e.* is

the judiciary corrupt)? *See, e.g., Aguinda v. Texaco, Inc.,* 303 F.3d 470, 478 (2d Cir.2002). Can the plaintiff litigate his claims safely and with peace of mind (*i.e.* free from threats of violence and/or trauma connected with the particular claims)? *See, e.g., Guidi v. Inter–Continental Hotels Corp.,* 224 F.3d 142, 147–48 (2d Cir. 2000). Only where "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all" should a district court deny *forum non conveniens* dismissal on the ground that the alternative forum is inadequate. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *see also, Aguinda,* 303 F.3d at 476–77.

Each of the 20 defendants has consented to jurisdiction in Russia. *See Base Metal Trading,* 253 F.Supp.2d at 698. The district court reviewed voluminous submissions from both parties' Russian law experts and concluded that plaintiffs had "numerous" legal options in Russia, including actions for fraud, collateral attacks on the allegedly "sham" bankruptcy proceedings, and civil actions that could be undertaken if plaintiffs engage the Russian authorities to investigate criminal wrongdoing by defendants. *See id.* at 700–09. Judge Koeltl also concluded that plaintiffs' concerns about violence and false criminal charges in Russia "do not rise to the level of gravity at which courts within this Circuit have spared parties . . . from returning to a threatening forum." *Id.* at 711 (emphasis omitted). Plaintiffs offer no persuasive basis to conclude that the court abused its discretion in reaching these conclusions; our review of the record and relevant case law reveals none.

With respect to corruption in the Russian judicial system, we note that it is not "the business of our courts to assume responsibility for supervising the integrity of the judicial system of another sovereign nation." *Blanco v. Banco Industrial de Venezuela, S.A.,* 997 F.2d 974, 982 (2d Cir.1993) (internal quotation marks omitted). Where the integrity of a foreign court is challenged, "considerations of comity preclude a court from adversely judging the quality of a foreign justice system absent a showing of inadequate procedural safeguards." *PT United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d 65, 73 (2d Cir.1998). Central to plaintiffs' RICO claims is their contention that the aluminum and vanadium bankruptcies were corrupted by the defendants through bribes to both lower court judges and the governors of the Kemerovo and Sverdlovsk regions of the Russian Federation. Plaintiffs also make generalized claims of bribery/undue influence with respect to several appellate court decisions ratifying the actions of the lower courts in both bankruptcies. The district court considered these allegations and found that plaintiffs are effectively challenging the validity of 120 Russian court proceedings, participated in by 150 local and appellate judges. Focusing particularly on four appellate decisions "which are clearly at the core of plaintiffs' case," Judge Koeltl found that "plaintiffs have made little, if any, attempt to articulate substantive allegations of corruption" with respect to them. *Base Metal Trading,* 253 F.Supp.2d at 709. Based on these and other supportable findings, the district court did not abuse its discretion in concluding that Russia was an adequate alternative forum to the Southern District of New York.

■ 3. Finally, the *Gilbert* factors are weighed to decide where a plaintiff's claims ought to be adjudicated. The private interest factors include:

(1) ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses;

(3) the cost of willing witnesses' attendance; (4) if relevant, the possibility of a view of premises; and (5) all other factors that might make the trial quicker or less expensive.

*DiRienzo v. Philip Servs. Corp.,* 294 F.3d 21, 29–30 (2d Cir.2002) (citing *Gilbert,* 330 U.S. at 508, 67 S.Ct. 839; *Iragorri,* 274 F.3d at 73–74). The district court must also weigh four public interest factors:

(1) administrative difficulties associated with court congestion; (2) the unfairness of imposing jury duty on a community with no relation to the litigation; (3) the "local interest in having localized controversies decided at home;" and (4) avoiding difficult problems in conflict of laws and the application of foreign law.

*DiRienzio,* 294 F.3d at 31 (citing *Gilbert,* 330 U.S. at 508–09, 67 S.Ct. 839; *Iragorri,* 274 F.3d at 74).

It is clear from the nature and subject matter of plaintiffs' claims that both the public and private interest factors strongly favor adjudication in Russia: (i) the vast majority of the acts complained of took place in Western Siberia and the Northern Urals; (ii) the witnesses are most likely in Russia; and (iii) the vast majority of documentary and other evidence is likely to be in Russia and in Russian. Turning to the public interest factors: (i) Russian law is likely to figure prominently in the case, as it challenges dozens of Russian court decisions; (ii) the contracts that allegedly were breached contain forum selection clauses outside the United States (many of them designating Russia); and (iii) with the exception of money transfers, this action has little or no connection to the United States, and thus little or no claim to the time and attention of an American jury or court. *See Base Metal Trading,* 253 F.Supp.2d at 709–13.

These, among other considerations, led the district court to dismiss plaintiffs' case on the ground of *forum non conveniens;* that dismissal was not a clear abuse of discretion.

For the reasons set forth above, the judgment of the district court is hereby AFFIRMED.