Nicholas **KLONIS** and Mary **Klonis, Plaintiffs,**

v.

**NATIONAL BANK OF GREECE, S.A., Defendant.**

**No. 05 Civ.6289 PKC DF.**

United States District Court, S.D. New York.

Dec. 27, 2006.

---

Robert Keith Erlanger, Law Firm of Robert K. Erlanger, New York City, for Plaintiffs.

Michael Thomas Sullivan, Emily Anne Samuels, Sullivan & Worcester LLP, New York City, for Defendant.

### MEMORANDUM AND ORDER

CASTEL, District Judge.

Plaintiffs Nicholas and Mary Klonis, a married couple, have sued the National Bank of Greece, S.A. ("NBG") for failure to pay the principal and interest due on three accounts that plaintiffs opened with

the National Mortgage Bank of Greece (NMBG) in the 1980's. NBG is the defendant in this action because NMBG—which had been a wholly-owned subsidiary of NBG—merged completely into NBG in 1998, and thereafter ceased to exist as a separate entity. Mr. Klonis opened the first account, a certificate of deposit account, in 1981 in Athens, Greece ("Athens Account" or "CD Account"). While there is some confusion in the record as to the date on which the subsequent accounts were opened, it appears that plaintiffs opened the two other accounts, both passbook savings accounts, in 1987 and 1989, respectively, in New York ("New York Accounts" or "Passbook Accounts"). Plaintiffs allege that they have never withdrawn the funds deposited in these accounts, and when they tried to do so, NBG refused to pay.

In 1999, Mr. Klonis hired a Greek lawyer to investigate the circumstances relating to the Athens Account. (N. Klonis Decl. ¶ 11) In April 2001, Mr. Klonis filed a complaint in Greece with the Athens Multi–Member Court of First Instance against NBG to recover the amounts due on that account. (N. Klonis Decl. ¶ 11; Vasilikou Aff. ¶ 3) Mrs. Klonis was not a party to that action, and the suit did not make any claims relating to the Passbook Accounts that were opened in New York. A hearing in that action was first scheduled for February 2002, then adjourned to February 2003, and then postponed due to a strike by judicial employees. (N. Klonis Decl. ¶ 11; Vasilikou Aff. ¶ 3) It appears that there was no further action by the parties or the Greek Court until September 6, 2005—after Mr. and Mrs. Klonis filed the complaint in this action—when NBG requested a new hearing in Greece. (Vasilikou Aff. ¶ 3) That hearing has been scheduled for February 7, 2007. (*Id.*)

NBG has moved to dismiss the claim relating to the Athens Account—but not the New York Accounts—for lack of personal jurisdiction. NBG has also moved to dismiss or for a stay of the entire case on the grounds of international comity and *forum non conveniens.* I am reserving decision on the issue of personal jurisdiction at this time. However, no matter how I decide that issue, it will not alter my decision on the international comity and *forum non conveniens* issues, and so I will now rule on NBG's motion in those respects. Defendant's motion to dismiss on those grounds is denied, and I also decline to stay this action pending the resolution of the action in Greece.

## A. *International Comity*

■ NBG has moved to dismiss or, alternatively, for a stay of the proceedings in this Court in favor of the pending action in Greece on the grounds of international comity. "International comity is 'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience.' " *Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.,* 466 F.3d 88, 92 (2d Cir.2006) (quoting *Hilton v. Guyot,* 159 U.S. 113, 163–64, 16 S.Ct. 139, 40 L.Ed. 95 (1895)). The principles of international comity vary in their application depending on whether a party seeks the recognition of a foreign judgment that has become final, or whether a party seeks "the recognition of a pending foreign proceeding that has yet to reach a final judgment." *Id.* The case at bar is in the latter category; the comity issue in this posture is sometimes referred to as the "comity of the courts." *Id.* (quotations omitted). In this context, the Second Circuit recently stated that

[g]enerally, concurrent jurisdiction in United States courts and the courts of a

foreign sovereign does not result in conflict. Rather, parallel proceedings in the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other. The mere existence of parallel foreign proceedings does not negate the district courts' "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

*Id.* (other internal quotations and citations omitted). The Second Circuit further instructed that "[t]he task of a district court evaluating a request for dismissal based on a parallel foreign proceeding is not to articulate a justification *for* the exercise of jurisdiction, but rather to determine whether exceptional circumstances exist that justify the surrender of jurisdiction." *Id.* at 93 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25–26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Colorado River*, 424 U.S. at 813, 96 S.Ct. 1236) (emphasis in original).

■ In assessing whether "exceptional circumstances" are present, a district court must identify "considerations which are not generally present as a result of parallel litigation," and carefully balance the "totality of the circumstances." *Id.* at 93–94. The relevant circumstances are guided by the principles of international comity, and include "the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." *Id.* at 94. These principles, in turn, generally require a Court to consider factors such as "the similarity of parties, the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction." *Id.* It is only where such considerations reveal circumstances which are sufficiently exceptional and outweigh the "virtually unflagging obligation" of the Court to exercise its jurisdiction that abstention is appropriate. *Id.*

In *Royal & Sun Alliance*, the Second Circuit also addressed the propriety of staying proceedings in the United States in deference to a foreign pending action. The Second Circuit recognized the Supreme Court's caution that " 'a stay is as much a refusal to exercise jurisdiction as a dismissal' because the decision to grant a stay 'necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case.' " *Id.* at 96 (quoting *Moses H. Cone*, 460 U.S. at 28, 103 S.Ct. 927). Nevertheless, the Second Circuit stated that in certain circumstances a "measured temporary stay need not result in a complete forfeiture of jurisdiction," and may be appropriate to give a district court "a window to determine whether the foreign action will in fact offer an efficient vehicle for fairly resolving all the rights of the parties...." *Id.* Such a stay should usually be considered before granting a motion to dismiss in deference to a pending foreign action, and a decision on a request for a stay is made by reference to the same standards as a motion to dismiss on such grounds. *Id.*

■ Defendant has failed to carry its burden under *Royal & Sun Alliance* to demonstrate that either a dismissal or a stay is warranted in favor of the pending Greek action. First, as a threshold matter, it is not clear that the Greek action and this action are completely "parallel proceedings." In order "[f]or two actions to be considered parallel, the parties in the actions need not be the same, but they

must be substantially the same, litigating substantially the same issues in both actions." *Id.* at 94. Both suits involve the CD Account opened in Athens, but the Passbook Accounts are not being litigated in Greece. It is not clear that the Passbook Accounts raise "substantially the same issues" as the CD Account. The record discloses no similarities beyond the identity of the parties and the nature of the alleged wrong, *i.e.,* the failure to pay principal and interest due on bank accounts. There is no basis to conclude, on this record, that a decision on the merits on the CD Account, rendered by any court, would be *res judicata* to claims on the Passbook Accounts.

In any event, even if the actions were substantially similar such that they could be fairly described as "parallel proceedings," there is no evidence of exceptional circumstances warranting the surrender of jurisdiction. To date, the Second Circuit has recognized only one context in which exceptional circumstances are generally present: cases in district courts that are parallel to pending foreign bankruptcy proceedings. *Royal & Sun Alliance,* 466 F.3d at 92–93 (citing *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,* 825 F.2d 709, 713–14, 715 (2d Cir.1987)). Foreign bankruptcy proceedings present exceptional circumstances and are afforded special deference due to the foreign nation's unique interest in the orderly and equitable distribution of debtor-assets. *Id.* at 93.[1] Interests of that magnitude are not implicated by this breach of contract case. This case is routine and defendant has identified nothing exceptional about it. Most of the arguments advanced by defendant relate to facts which will generally exist in parallel litigations, including the identity of the parties and issues and the adequacy of the foreign forum, which are insufficient to overcome the obligation of this Court to exercise its jurisdiction. Similarly, defendant's claims of prejudice, inconvenience, and the connection of the litigation to the United States and to Greece—and which are discussed in greater detail in Part B of this opinion—strike the Court as unexceptional. Therefore, defendant's motion to dismiss on the grounds of international comity is denied because comity considerations do not outweigh the important obligation of the Court to exercise its jurisdiction. If the Greek action becomes final, defendant will be free to present its *res judicata* arguments to the Court.

■ I will also deny defendant's motion in the alternative for a stay in deference to the pending Greek action. Such stays are only appropriate where a Court could make use of "a window to determine whether the foreign action will in fact offer an efficient vehicle for fairly resolving all the rights of the parties." *Id.* at 96. In this case, the posture of the Greek litigation has not changed in almost five years. Moreover, Mr. Klonis has declared under penalty of perjury that he can no longer afford to pay his Greek counsel. (N. Klonis Decl. ¶ 13) Under these circumstances, there is no need for a stay to assess whether the Greek action is a more efficient vehicle for resolving the rights of the parties.

### B. *Forum Non Conveniens*

■ Defendant has also moved for dismissal on *forum non conveniens*

---

1. I note that the only opinion from the Second Circuit cited by defendant in support of the motion to dismiss on the grounds of comity is merely an application of the general rule that foreign pending bankruptcy proceedings warrant abstention from parallel actions in the United States. *See Finanz AG Zurich v. Banco Economico S.A.,* 192 F.3d 240 (2d Cir. 1999).

grounds. *Forum non conveniens* allows a court to "resist the imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Norex Petroleum Ltd. v. Access Inds. Inc.*, 416 F.3d 146, 153 (2d Cir.2005) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)), *cert. denied sub nom. Tyumen Oil Co. v. Norex Petroleum Ltd.*, — U.S. ——, 126 S.Ct. 2320, 164 L.Ed.2d 860 (2006). In the Second Circuit, district courts are instructed to assess *forum non conveniens* motions under a three-step process. First, the court must determine the degree of deference that plaintiffs' choice of forum deserves. Next, it must determine whether the proposed alternative forum constitutes an adequate forum for the resolution of the claims. Finally, assuming that the alternative forum is adequate, the court must weigh the relevant private and public interest factors and determine whether the plaintiffs' chosen forum or the proposed alternative is, in fact, the more convenient and appropriate forum. *Norex*, 416 F.3d at 153 (citing *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 73 (2d Cir.2001) (*en banc*)).

### 1. *Deference to Plaintiffs' Choice of Forum*

■ The review of a *forum non conveniens* motion starts with "a strong presumption in favor of plaintiff's choice of forum." *Norex*, 416 F.3d at 154 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). In other words, plaintiffs' choice is entitled to deference by the Court, but the amount of deference varies with the circumstances of a case. Where, as here, a Court is presented with U.S. citizens suing in a forum other than the one in which they reside, the Second Circuit explained in *Iragorri* that the amount of deference due is

evaluated on a "sliding scale." *See*, 274 F.3d at 71.

■ Under this sliding scale approach, the more it appears that the plaintiffs' selection was guided by "reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff[s'] forum choice." *Norex*, 416 F.3d at 154. Valid reasons include "[1] the convenience of the plaintiff's residence in relation to the chosen forum, [2] the availability of witnesses or evidence to the forum district, [3] the defendant's amenability to suit in the forum district, [4] the availability of appropriate legal assistance, and [5] other reasons relating to convenience." *Id.* at 155 (quoting *Iragorri*, 274 F.3d at 72).

■ On the other hand, if it appears that the forum was selected for forum-shopping reasons, then the plaintiffs' choice is entitled less deference. Factors probative of forum-shopping include: "[1] attempts to win tactical advantage resulting from local laws that favor the plaintiff's case, [2] the habitual generosity of juries in the United States or in the forum district, [3] the plaintiff's popularity or the defendant's unpopularity in the region, or [4] the inconvenience and expense to the defendant resulting from litigation in that forum." *Id.* (quoting *Iragorri*, 274 F.3d at 72).

■ The plaintiffs' choice of forum in this case is entitled to substantial deference. Although plaintiffs are domiciled in Florida, New York is more convenient than Greece in relation to plaintiffs' residence for reasons relating to expense and convenience of travel. Defendant is amenable to suit in New York because—at a minimum—specific personal jurisdiction exists with respect to two of the three accounts at issue, and there is nothing to suggest that Florida, or any other domes-

tic forum, is an available alternative. Plaintiffs have been able to secure legal services here, and have submitted a declaration swearing that they cannot afford legal services in Greece. (N. Klonis.Decl.¶ 13) Thus, valid justifications support the plaintiffs' choice.

The record is devoid of any meaningful suggestion that plaintiffs sued in New York for illegitimate reasons. First, although the Complaint makes a jury demand, plaintiffs' opposition brief has waived that demand. (Pl.Mem.Opp.18) Thus, concerns emanating from forum-shopping for generous juries are eliminated. Moreover, defendant has not come forward with evidence of any tactical advantage obtained by bringing suit in New York.

The only factor that is present that may be probative of forum-shopping is that since NBG no longer maintains personnel or offices in the United States, there may be some inconvenience or expense to NBG in litigating here. The evidence in defendant's control is likely to be located in Greece. Documents are likely to be in Greek, requiring translation, and witnesses may not be able to communicate in English without interpreters. However, there is no indication that this case will require substantial document discovery, or involve a burdensome number of Greek witnesses. In fact, defendant has identified only three witnesses in Greece who are likely to be necessary to the adjudication of these claims. (Vasilikou Aff. ¶ 5) At the same time, two important witnesses—Mr. and Mrs. Klonis—reside in the United States, and any evidence in their control is in the United States.

The record discloses ample valid justifications for the choice of the New York forum, and there is little to support the accusation of forum-shopping. Therefore, plaintiffs' choice of forum is entitled to substantial deference.

### 2. Adequate Alternative Forum

 The second step in the *forum non conveniens* analysis considers whether there is an adequate alternative forum proposed by the defendant. The proposed alternative forum is Greece. An alternative forum is "adequate if the defendants are amendable to service of process there, and if it permits litigation of the subject matter of the dispute." *Norex*, 416 F.3d at 157 (quotations omitted).

NBG has submitted an affidavit from an NBG attorney which represents that under Greek law, Greek courts would permit the litigation of claims relating to all of the plaintiffs' accounts. (Vasilikou Aff. ¶ 6) The affidavit posits that plaintiffs can file a new action in Greece, and then have the new action joined with the pending action relating to the CD Account. (*Id.*) Plaintiffs do not controvert defendant's claims under Greek law. Plaintiffs' only objection to the adequacy of the Greek forum is that the Greek judicial system operates inefficiently. However, since plaintiffs offer no reason to doubt NBG's amenability to suit in Greece or that the Greek Courts would permit a suit relating to the Passbook Accounts, NBG has met its burden of proving the existence of an adequate alternative forum.

### 3. Private and Public Interest Factors

 The last step in the *forum non conveniens* analysis requires the Court to balance the relevant private and public interest factors to determine whether the plaintiffs' choice of forum is less convenient than the defendant's proposed alternative forum. The balance of these factors must be "strongly in favor of defendant" in order for dismissal to be appropriate. *No-*

*rex*, 416 F.3d at 154 (quoting *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839).

The relevant private interest factors in this case are: "[1] the ease of access to sources of proof; [2] the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; ... and [3] all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839; *see also Iragorri*, 274 F.3d at 73–74 (reciting *Gulf Oil* private interest factors). The relevant public interest factors in this case include: (1) court congestion; (2) the relation of the litigation to the chosen forum as opposed to its relation to the proposed alternative forum, *i.e.*, the "local interest in having localized controversies decided at home"; and (3) the interest in having disputes adjudicated in a forum that is "at home with the ... law that must govern the case...." *Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. 839; *see also Iragorri*, 274 F.3d at 74 (reciting *Gulf Oil* public interest factors).

The private interest factors in this case do not strongly favor the Greek forum. As noted previously, while there are undoubtedly some relevant documents or witnesses in Greece, defendant has not indicated that this case is likely to involve voluminous documents or many Greek witnesses. As I also noted previously, the documentary evidence and witnesses in plaintiffs' control are more conveniently delivered to New York, since it is easier to travel here from Florida than from Florida to Greece. Thus, this factor does not weigh heavily in defendant's favor.

Defendant has not claimed that its witnesses will be unavailable or unwilling to testify in New York. Rather, defendant complains of the cost associated with requiring NBG to force its employees to travel to New York to appear at trial.

However, the cost to plaintiffs to travel to Greece—a place where they have not been since 1992 (N. Klonis Decl. ¶ 9)—balances out this factor, such that it cannot be said to weigh heavily in NBG's favor.

Finally, practical considerations weigh in favor of the New York forum. While Mr. Klonis did bring a lawsuit in Greece over five years ago, plaintiffs have submitted a declaration swearing under penalty of perjury that they cannot afford to prosecute that action. NBG does not make a similar claim with respect to defending the action here. Thus, the hardship to plaintiffs that would accompany a dismissal in this case outweighs the hardship to defendant in defending this case in New York.

The public interest factors also counsel in favor denial of the *forum non conveniens* motion. There is no evidence to suggest that this court suffers more congestion than the Greek Courts. In addition, since two of the accounts at issue were opened in New York City, despite the fact that NBG is a Greek institution, it cannot be said that Greece has a much stronger local interest than New York in the adjudication of this case. Finally, while the parties have said little about the law to be applied—and I note that I express no opinion at this time on choice of law issues—it nonetheless would seem likely that since one of the accounts was opened in Greece, and two were opened in New York, Greek law would govern one of the accounts, and New York law would govern the other two.

In view of the relevant private and public interest factors, I conclude that defendant has failed to meet its burden of showing that dismissal on the grounds of *forum non conveniens* is warranted.

*Conclusion*

(1) The motion to dismiss or for a stay in favor of the pending Greek action is denied;

(2) The motion to dismiss on *forum non conveniens* grounds is denied.

(3) A decision on whether NBG was subject to general *in personam* jurisdiction in New York at the time the suit was filed is reserved.

SO ORDERED.