In re OPTIMAL U.S. LITIGATION.

No. 10 Civ. 4095(SAS).

United States District Court,
S.D. New York.

Aug. 10, 2012.

Opinion Denying Reconsideration
Oct. 10, 2012.

Edward W. Miller, Esq., Garden City, NY, Alan Ian Ellman, Esq., Javier Bleichmar, Esq., Labaton Sucharow, LLP, New York, NY, Jack Reise, Esq., Michael L. Greenwald, Esq., Robbins Geller Rudman & Dowd LLP, Boca Raton, FL, for Plaintiffs.

Gustavo J. Membiela, Esq., Samuel A. Danon, Esq., Hunton & Williams, LLP, Miami, FL, Paulo Roberto Lima, Esq., Shawn Patrick Regan, Esq., Hunton & Williams, LLP, New York, NY, for Defendants.

### *OPINION AND ORDER*

SHIRA A. SCHEINDLIN, District Judge.

## I. INTRODUCTION [1]

This putative class action arises out of plaintiffs' investment in the Optimal Strategic U.S. Equity Fund ("Optimal U.S." or

---

1. Familiarity with prior Opinions, in particular the prior Opinion on forum non conveniens, is assumed. *See In re Optimal U.S. Litig.*, 837 F.Supp.2d 244 (S.D.N.Y.2011) ("December 20 Opinion").

the "Fund"), which in turn invested one-hundred percent of its assets with Bernard L. Madoff and his firm, Bernard L. Madoff Investment Securities LLC ("BMIS"). Plaintiffs allege that defendants failed to conduct adequate diligence regarding Madoff, ignored "red flags" that should have alerted them to Madoff's fraud, and made misstatements and omissions in connection with the sale of Optimal U.S. shares, causing plaintiffs to lose their investments and allowing defendants wrongfully to collect management fees.[2]

On December 20, 2011, I denied defendants' initial motion for forum non conveniens. At that time, the balance of factors was extremely close, and I noted that the public interest factors did point slightly in favor of dismissal. However, I denied defendants' motion based primarily on the deference owed to plaintiffs' choice of forum, the United States' interest in enforcing violations of federal securities law, and the due diligence efforts conducted in New York. Defendants now move, for a second time, for dismissal on the grounds of forum non conveniens. Since the December 20 Opinion plaintiffs' federal securities law claims have been dismissed and the parties have undertaken extensive discovery efforts in Europe. This dispute now concerns claims, governed by foreign law under relevant choice-of-law principles, brought by foreign plaintiffs suing mostly foreign defendants based on alleged misstatements made abroad. Because the balance of factors has changed and now point strongly towards dismissal, defendants' motion is now granted.

## II. APPLICABLE LAW

### A. Forum Non Conveniens

"[F]ederal courts have the power to dismiss damages actions under the common-law forum non conveniens doctrine ... in 'cases where the alternative forum is abroad.' "[3] The "decision to dismiss by reason of forum non conveniens is confided to the sound discretion of the district court."[4] "[I]n the determination of a motion to dismiss for forum non conveniens,

---

**2.** Defendants include (1) Optimal U.S.'s investment manager, Optimal Investment Management Services, S.A. ("OIS"); (2) an employee thereof, Jonathan Clark; and (3) OIS's corporate parent, Banco Santander, S.A. ("Banco Santander"). Plaintiffs include (1) Pioneer International Ltd. ("Pioneer"), an investment advisory firm incorporated in the British Virgin Islands; (2) the "Pioneer Plaintiffs," fifty-six non-U.S. persons and entities who invested in Optimal U.S. based on advice provided by Pioneer (whose advice was in turn based on Defendants' misrepresentations); (3) the "Santander Plaintiffs," three foreign citizens/non-U.S. residents to whom Banco Santander International ("Santander U.S.") marketed and sold Optimal U.S., and who held their Optimal U.S. investments in accounts with non-party Santander Bank & Trust, Ltd. in the Bahamas ("SBT Bahamas" or "SBT"); and (4) Silvana Worldwide Corp. ("Silvana"), a Plaintiff who invested in Optimal U.S. from a non-Santander-affiliated bank account. *See In re Optimal U.S. Litig.,* 813 F.Supp.2d 351, 356–57 (S.D.N.Y.2011)

("May 2 Opinion"); Fourth Amended Complaint ("FAC") ¶ 64.

**3.** *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 722, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *American Dredging Co. v. Miller,* 510 U.S. 443, 449 n. 2, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994)). *Accord Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007).

**4.** *Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64, 70 (2d Cir.2003) (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). *Accord ICC Indus. Inc. v. Israel Disc. Bank, Ltd.,* 170 Fed.Appx. 766, 767 (2d Cir.2006) (" 'Where the district court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.' ") (quoting *Carey v. Bayerische Hypo–Und Vereinsbank,* 370 F.3d 234, 237 (2d Cir.2004)).

the court may consider affidavits submitted by the moving and opposing parties.' " [5]

■ The Second Circuit employs a three-part test established in the seminal case of *Iragorri v. United Technologies Corporation* in addressing motions to dismiss under the doctrine of forum non conveniens.[6] "At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum." [7]

■■ "[A] court reviewing a motion to dismiss for forum non conveniens should begin with the assumption that the plaintiff's choice of forum will stand." [8] However, "the degree of deference given to a plaintiff's forum choice varies with the circumstances" and "the choice of a United States forum by a foreign plaintiff is entitled to less deference." [9] In assessing the proper measure of deference,

[f]actors disfavoring forum non conveniens dismissal "include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." In contrast, Plaintiffs' choice of forum deserves *minimal deference* where that choice was motivated by "attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum." [10]

Thus, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be ... to gain dismissal" whereas "the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons ... the less deference the plaintiff's choice commands." [11]

■ At step two, "the court must consider whether an adequate alternative forum exists." [12] "The defendant bears the

5. *Base Metal Trading SA v. Russian Aluminum*, 253 F.Supp.2d 681, 699 n. 13 (S.D.N.Y. 2003) (quoting *Vanity Fair Mills, Inc. v. T Eaton Co.*, 234 F.2d 633, 645 (2d Cir.1956)), aff'd, 98 Fed.Appx. 47 (2d Cir.2004).

6. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70–75 (2d Cir.2001) (en banc).

7. *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir.2005). *Accord Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir.2009).

8. *Iragorri*, 274 F.3d at 71. *Accord Giro, Inc. v. Malaysian Airline Sys. Berhad*, No. 10 Civ. 5550, 2011 WL 2183171, at *5 (S.D.N.Y. June 3, 2011).

9. *Iragorri*, 274 F.3d at 71. *Accord Thai–Lao Lignite (Thailand) Co. v. Government of the Lao People's Democratic Republic*, No. 10 Civ. 5256, 2011 WL 3516154, at *9 (S.D.N.Y. Aug. 3, 2011).

10. *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F.Supp.2d 712, 724–25 (S.D.N.Y. 2011) (quoting *Iragorri*, 274 F.3d at 72) (emphasis added).

11. *Palacios v. Coca–Cola Co.*, 757 F.Supp.2d 347, 352 (S.D.N.Y.2010) (quotation marks omitted). *Accord Huang v. Advanced Battery Tech., Inc.*, No. 09 Civ. 8297, 2010 WL 2143669, at *3 (S.D.N.Y. May 26, 2010).

12. *Iragorri*, 274 F.3d at 73.

burden of establishing that a presently available and adequate alternative forum exists."[13]

> Dismissal is not appropriate if an adequate and presently available alternative forum does not exist.... [A] forum may ... be inadequate if it does not permit the reasonably prompt adjudication of a dispute, if the forum is not presently available, or if the forum provides a remedy so clearly unsatisfactory or inadequate that it is tantamount to no remedy at all.[14]

However, "[a]n alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute."[15] "An agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy this requirement, and only on rare occasions will the alternative forum ... be so unsatisfactory that the forum is inadequate."[16] Moreover, "[t]he availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum, nor on identical remedies."[17]

 "At step three, Defendants must establish that a balancing of the private and public interest factors tilts heavily in favor of the alternative forum."[18] In weighing the private and public interests, the Second Circuit employs a list of factors first stated in *Gulf Oil Corp. v. Gilbert*.[19] "The private interest factors include: (1) the relative ease of access to evidence; (2) the cost to transport witnesses to trial; (3) the availability of compulsory process for unwilling witnesses; and (4) other factors that make the trial more expeditious or less expensive."[20] "In considering these factors, the court is necessarily engaged in a comparison between the hardships defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as the result of dismissal and the obligation to bring suit in another country."[21] However, "the concentration of evidence [overseas] weighs heavily in favor of dismissal."[22] Moreover, American courts may not be able to "compel unwilling third-party witnesses to appear in the United States."[23]

 "The public interest factors include: (1) settling local disputes in a local forum; (2) avoiding the difficulties of applying foreign law; and (3) avoiding the burden on jurors by having them decide cases that have no impact on their commu-

---

13. *Abdullahi*, 562 F.3d at 189.

14. *Id.*

15. *Pollux Holding*, 329 F.3d at 75. *Accord Turedi v. Coca–Cola Co.*, 343 Fed.Appx. 623, 625 (2d Cir.2009); *Online Payment Solutions Inc. v. Svenska Handelsbanken AB*, 638 F.Supp.2d 375, 384 (S.D.N.Y.2009) ("[T]he standard imposed on a defendant to establish such adequacy is not heavy.").

16. *BFI Grp. Divino Corp. v. JSC Russian Aluminum*, 298 Fed.Appx. 87, 91 (2d Cir.2008) (quotation marks omitted).

17. *Norex Petroleum*, 416 F.3d at 158 (quotation marks omitted). *Accord PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir.1998).

18. *Erausquin*, 806 F.Supp.2d at 726.

19. *See Iragorri*, 274 F.3d at 73–74 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), *superseded by statute as stated by Gazis v. John S. Latsis (USA)* 729 F.Supp. 979, 987 (S.D.N.Y.1990)).

20. *Maersk, Inc. v. Neewra, Inc.*, 554 F.Supp.2d 424, 453–54 (S.D.N.Y.2008).

21. *Iragorri*, 274 F.3d at 74.

22. *Palacios*, 757 F.Supp.2d at 361.

23. *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir.2002).

nity." [24] No one factor is dispositive, however, and so, for example, although "this country's interest in having United States courts enforce United States securities laws" is relevant "this interest is not outcome-determinative." [25] In sum, "[t]he action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable." [26]

## B. Choice of Law

▮▮▮▮ To resolve choice-of-law conflicts in tort cases, New York applies an "interest analysis" to identify the jurisdiction that has the greatest interest in the litigation based on the occurrences within each jurisdiction, or contacts of the parties with each jurisdiction, that " 'relate to the purpose of the particular law in conflict.' " [27]

> Under the interest-analysis test, torts are divided into two types, those involving the appropriate standards of conduct, rules of the road, for example and those that relate to allocating losses that result from admittedly tortious conduct

... such as those limiting damages in wrongful death actions, vicarious liability rules, or immunities from suit.[28]

▮▮▮ "Conduct-regulating rules have the prophylactic effect of governing conduct to prevent injuries from occurring." [29] When such rules are at issue, the law of the place of the tort—commonly known as *lex loci delicti*—"will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." [30] In the end, "[i]f the choice of law analysis leads to the application of foreign law, a court may refuse to apply that law only if its application would be violative of fundamental notions of justice or prevailing concepts of good morals." [31]

## III. DISCUSSION

### A. Deference Accorded to Plaintiffs' Choice of Forum

▮▮▮▮ Generally, a foreign plaintiff's choice of forum is accorded less deference, unless the choice of forum is based on "valid reasons, such as convenience." [32] In the December 20 Opinion on forum non conveniens, I held that plaintiffs' choice of forum was accorded deference.[33] In doing

---

**24.** *Maersk,* 554 F.Supp.2d at 453–54.

**25.** *DiRienzo,* 294 F.3d at 28. *Accord Allstate Life Ins. Co. v. Linter Grp. Ltd.,* 994 F.2d 996, 1002 (2d Cir.1993) ("United States courts have an interest in enforcing United States securities laws, [but] this alone does not prohibit them from dismissing a securities action on the ground of forum non conveniens.").

**26.** *Iragorri,* 274 F.3d at 74–75.

**27.** *GlobalNet Financial.Com v. Frank Crystal & Co.,* 449 F.3d 377, 384 (2d Cir.2006) (quoting *Schultz v. Boy Scouts of Am., Inc.,* 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985)). *Accord Finance One Pub. Co. v. Lehman Bros. Special Fin., Inc.,* 414 F.3d 325, 337 (2d Cir.2005) (citation omitted) (explaining that the interest analysis is a "flexible approach intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern

with the specific issue raised in the litigation").

**28.** *GlobalNet Financial.Com,* 449 F.3d at 384 (quotation marks and citations omitted).

**29.** *Padula v. Lilarn Props. Corp.,* 84 N.Y.2d 519, 522, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (1994).

**30.** *Cooney v. Osgood Mach., Inc.,* 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993).

**31.** *Curley v. AMR Corp.,* 153 F.3d 5, 12 (2d Cir.1998) (citing *Brink's Ltd. v. South African Airways,* 93 F.3d 1022, 1031 (2d Cir.1996)).

**32.** *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,* 446 F.Supp.2d 163, 177 (S.D.N.Y.2006).

**33.** *See Optimal,* 837 F.Supp.2d at 253–56.

so, I distinguished four opinions holding that plaintiffs' choice of forum was not accorded significant deference in similar cases involving foreign investors in foreign funds that allegedly suffered losses due to the Madoff Ponzi scheme.[34] In reevaluating the *Iragorri* factors, I now conclude that plaintiffs' choice of forum is "entitled to some, but little, deference."[35]

*First*, the "convenience of the plaintiff's residence in relation to the chosen forum,"[36] was not a significant factor in my prior analysis. As I previously noted, "plaintiffs reside all over the world" and "[t]here simply is no forum that is convenient in relation to *all* plaintiffs' residences."[37] Accordingly, "[w]hile [this factor] do[es] not suggest that New York is preferable to Switzerland ..., [it] do[es] not raise any inference that plaintiffs' choice of New York was motivated by forum shopping considerations."[38]

*Second*, "the availability of witnesses or evidence to the forum district"[39] now weighs against according significant deference to plaintiffs' choice of forum. I previously noted that there was a significant amount of evidence in New York as well as in Europe, and held that this factor did not weigh heavily in either direction.[40] However, as discovery in this case has pro-

gressed, it has become clear that the focus of discovery is in Europe, which weighs against according plaintiffs' choice of forum deference. As of July 16, plaintiffs had noticed or taken two depositions in New York, while fourteen deposition had been noticed or taken in Europe.[41] Moreover, plaintiffs have resisted sitting for depositions in New York arguing that it would "requir[e] disruptive and expensive international travel for each Plaintiff."[42] Finally, the document discovery has been focused abroad—fourteen letters rogatory have been issued seeking discovery in the United Kingdom, Ireland, Spain, Switzerland, Netherlands, and Israel.[43] Plaintiffs have submitted declarations detailing the scope of relevant evidence located in the United States.[44] However, these declarations mainly detail the documentary evidence relating to diligence efforts in the United States, which does not change my analysis that the significance of the United States evidence is outweighed by that located in Europe.

Although plaintiffs suggest that there is a possibility of deposing several additional U.S. residents,[45] the focus of their discovery has been in Europe. As discussed below, several key witnesses are former employees of OIS and not subject to com-

---

**34.** *See In re Herald, Primeo, & Thema Sec. Litig.*, No. 09 Civ. 289, 2011 WL 5928952 (S.D.N.Y. Nov. 29, 2011); *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F.Supp.2d 712 (S.D.N.Y.2011); *Anwar v. Fairfield Greenwich Ltd.*, 742 F.Supp.2d 367, 375–78 (S.D.N.Y.2010); *In re Banco Santander Sec.-Optimal Litig.*, 732 F.Supp.2d 1305, 1336 (S.D.Fla.2010), *aff'd sub nom. Inversiones Mar Octava Limitada v. Banco Santander S.A.*, 439 Fed.Appx. 840 (11th Cir.2011) (per curiam).

**35.** *In re Banco Santander Sec.-Optimal Litig.*, 732 F.Supp.2d at 1336.

**36.** *Iragorri*, 274 F.3d at 72.

**37.** *Optimal*, 837 F.Supp.2d at 253 (emphasis in original).

**38.** *Id.* at 254.

**39.** *Iragorri*, 274 F.3d at 72.

**40.** *See Optimal*, 837 F.Supp.2d at 254.

**41.** *See* 7/16/12 letter from Paulo R. Lima, defendants' counsel, to the Court.

**42.** 7/13/12 letter from Javier Bleichmar, plaintiffs' counsel, to the Court.

**43.** *See* 7/16/12 letter at 3.

**44.** *See* 8/6/12 and 8/8/12 Declarations of Javier Bleichmar, plaintiffs' counsel.

**45.** *See* 8/6/12 Declaration of Javier Bleichmar, plaintiffs' counsel, ¶ 6.

pulsory service to attend a trial in New York. Accordingly, while in my prior opinion I noted that letters rogatory are an appropriate mechanism for securing testimony and that technological advances make international document production less burdensome,[46] it is now clear that the location abroad of the vast bulk of the evidence weighs against according significant deference to plaintiffs' choice of forum.

*Third,* "the defendant's amenability to suit in the forum district," [47] as discussed previously, still weighs in favor of according some deference to plaintiffs' choice of forum despite defendants' consent to jurisdiction in Switzerland.[48] However, I do not weigh this factor heavily because no plaintiff is a U.S. citizen and only one defendant is a U.S. citizen.

*Fourth,* I previously found that there was no indication that plaintiffs' choice of forum was motivated by improper tactical considerations.[49] Given that the focus of discovery has not been the United States, I am less inclined to infer that plaintiffs' choice of forum was motivated by genuine convenience rather than tactical considerations. Indeed, in a prior action based on similar facts brought by many of the same plaintiffs' counsel, the court noted that plaintiffs "acknowledge[d] that their decision to sue in the United States [was], to a considerable extent, based on the availability of advantageous procedural mechanisms such as the class action and contingency fee arrangements." [50] Accordingly,

I find that this factor does not favor deference to plaintiffs' choice of forum.

*Fifth,* I previously concluded that there was no indication that defendants were forum shopping.[51] Plaintiffs now argue that the fact that defendants' Swiss employees requested to be deposed in Spain indicates that defendants are forum shopping. However, because defendants have corporate headquarters in both Spain and Switzerland, I cannot conclude that their choice of one forum for a handful of depositions and the other for the proposed venue of this lawsuit represents improper forum shopping.

In reweighing the *Iragorri* factors, the locus of discovery counsels that the deference accorded to plaintiffs' choice of forum should be limited. I had previously distinguished the *Banco Santander* decision, based on a similar case, noting that "plaintiffs here argue that their choice of forum was based on the evidence available in New York." [52] Given that I now find that plaintiffs' argument has less force, I agree with that court's conclusion that plaintiffs' choice of forum is "entitled to some, but little, deference." [53]

**B. Adequacy of Switzerland as an Alternative Forum**

I previously held that Switzerland was an adequate alternative forum for this action.[54] Defendants have consented to waive any defenses in a Swiss court arising out of lack of jurisdiction or any applicable statute of limitations, and dismissal is contingent on such a waiver.

---

46. *See Optimal,* 837 F.Supp.2d at 254.

47. *Iragorri,* 274 F.3d at 72.

48. *See Optimal,* 837 F.Supp.2d at 254–55.

49. *See id.* at 255.

50. *In re Banco Santander Sec.-Optimal Litig.,* 732 F.Supp.2d at 1336.

51. *See Optimal,* 837 F.Supp.2d at 255.

52. *See id.* at 256.

53. *In re Banco Santander Sec.-Optimal Litig.,* 732 F.Supp.2d at 1336.

54. *See Optimal,* 837 F.Supp.2d at 256–57.

Plaintiffs have not raised any argument that changes my prior decision that Switzerland provides an adequate forum.[55]

## C. Private and Public Interest Factors

### 1. Private Interests

■ *First*, I previously held that the "relative ease of access to evidence"[56] did not weigh significantly in either direction.[57] I noted that certain factors considered by the *Erausquin* and *Banco Santander* courts weighed against the United States as a forum: all plaintiffs are foreign; and "[o]f the 121 defendants and third-parties plaintiffs believed likely to have discoverable information, thirty-five have Swiss addresses and twenty-three have addresses in other European countries, mainly Ireland. Only a handful are in New York."[58]

On the other hand, I noted that evidence concerning due diligence efforts was focused in New York. It is now clear, however, that the focus of discovery is in Europe.

As will be discussed below under the third factor, a number of key witnesses are former employees of defendants and no longer subject to compulsory process to attend a trial in New York. Thus, the "relative ease of access to evidence"[59] weighs in favor of Switzerland over New York.[60]

*Second*, I previously held that the "cost to transport witnesses to trial"[61] is not a significant factor in the forum non conveniens analysis in this instance.[62] Nothing in defendants' renewed motion changes that conclusion.

*Third*, I previously held that the "availability of compulsory process for unwilling witnesses"[63] did not weigh heavily in either direction.[64] In doing so, I again relied on the importance of the witnesses located in the United States and the presence of the due diligence team in New York and New Jersey and considered that testimony from other witnesses could be secured through letters rogatory.[65] However, it now appears that critical testimony

---

55. I briefly note that the unavailability of the class action mechanism in Switzerland does not render it an inadequate forum. *See Aguinda v. Texaco, Inc.*, 303 F.3d 470, 478 (2d Cir.2002) (holding that joinder, where there is no class action mechanism, "is not so burdensome as to deprive the plaintiffs of an effective alternative forum"). While the lack of a class action mechanism may be relevant to the convenience analysis in the private interest factors, this carries little weight when there are no U.S. plaintiffs and the other factors weigh strongly in favor of dismissal. *See Gilstrap v. Radianz Ltd.*, 443 F.Supp.2d 474, 488 (S.D.N.Y.2006).

56. *Maersk*, 554 F.Supp.2d at 453–54.

57. *See Optimal*, 837 F.Supp.2d at 257–58.

58. *Id.* at 257–58.

59. *Maersk*, 554 F.Supp.2d at 453–54.

60. On August 9, 2012, plaintiffs' counsel sent a letter to the Court attaching the August 6, 2012 Memorandum Decision and Order in *Viking Global Equities LP v. Porsche Automobil Holding SE*, 36 Misc.3d 1233(A), Index No. 650435/11, 2012 WL 3640684 (Sup.Ct. N.Y.Co. Aug. 6, 2012), arguing that the decision counsels in favor of weighing the New York based diligence evidence heavily and discounting the burden of applying foreign law. However, that case is easily distinguishable because (1) the court "afforded great weight" to plaintiffs' choice of forum; (2) the plaintiffs' "principal places of business [were] in New York"; and (3) the alleged misrepresentations were "purportedly made directly to plaintiffs in New York." *Id.* at 10. For these reasons, none of which exist here, the court held that "New York clearly has a vested interest" in the action. *Id.* at 12.

61. *Id.*

62. *See Optimal*, 837 F.Supp.2d at 258.

63. *Maersk*, 554 F.Supp.2d at 453–54.

64. *See Optimal*, 837 F.Supp.2d at 259.

65. *See id.*

will come from defendants' former employees, who cannot be compelled to appear at trial in New York. These witnesses include perhaps the most critical witness in this case—Manuel Echeverria, former CEO of OIS. Because of that, I now find that the "availability of compulsory process for unwilling witnesses" [66] weighs in favor of Switzerland.

*Fourth,* I previously found defendants' attempt to point to "other factors that make the trial more expeditious or less expensive" [67] unavailing.[68] I continue to find that defendants' arguments concerning foreign law are properly considered under the public interest factors rather than the private interest factors.

*Fifth,* plaintiffs argue that the advanced stage of this litigation counsels against dismissal based on forum non conveniens. Although plaintiffs are correct on this point,[69] it is not determinative in this action. Plaintiffs observe that extensive discovery has occurred and that this Court has expended a great deal of resources on this case, and this would normally weigh against dismissal. However, much of that effort was required because of the action's minimal connection to New York. In the course of five written opinions, thirteen of plaintiffs' eighteen claims have been dismissed. In particular, the federal securities law claims survived a motion to dismiss based on a tenuous theory, only to be dismissed later when plaintiffs conceded that the transactions did not occur in the United States. Likewise, the extensive

discovery that has occurred does not counsel against dismissal because defendants have consented to permit such discovery to be used in a Swiss proceeding and dismissal is conditioned on plaintiffs' ability to use discovery already obtained in this case when the case is re-filed in Switzerland.[70] While starting the proceedings anew in Switzerland will cause some procedural delay, such delay will be minimized by the extensive discovery available from this litigation, which is likely much broader discovery than a Swiss court would permit.

Although I previously found that the private interest factors "fail to weigh heavily in either direction," I now find, based on the course of discovery, that private interests in this dispute between foreign plaintiffs and mainly foreign defendants arising from statements made abroad and based on transactions not governed by U.S. securities law, weigh in favor of a foreign forum; namely, Switzerland.

### 2. Public Interests

*First,* I previously found that the fora's relative interests [71] weigh slightly in favor of New York.[72] In doing so, I distinguished *Banco Santander* and *Erausquin,* which held that the United States interests had been affirmed in the criminal prosecution of Madoff, a Securities and Exchange Commission lawsuit, and numerous lawsuits filed by domestic plaintiffs alleging domestic causes of action relating to the Madoff fraud.[73] I found that New York

---

66. *Maersk,* 554 F.Supp.2d at 453–54.

67. *Id.*

68. *See Optimal,* 837 F.Supp.2d at 259.

69. *See Lony v. E.I. DuPont de Nemours & Co.,* 935 F.2d 604, 614 (3d Cir.1991) ("[W]henever discovery in a case has proceeded substantially so that the parties already have invested much of the time and resources they will expend before trial, the presumption against

dismissal on the grounds of *forum non conveniens* greatly increases.").

70. *See* Defendants' Reply in Support of Their Renewed Motion to Dismiss Based on *Forum non Conveniens* at 4.

71. *See Maersk,* 554 F.Supp.2d at 453–54.

72. *See Optimal,* 837 F.Supp.2d at 259–61.

73. *See id.*

had some interest in this case because of an "interest in federal securities fraud claims arising from New York based conduct." [74] However, plaintiffs' federal securities law claims have subsequently been dismissed. [75] In addition, the role of the New York based conduct is now less substantial. While Clark made his alleged misstatements from New York, he did so on a telephone call to Switzerland. The other alleged misstatements emanated from OIS, based in Switzerland, which has a stronger interest in policing such conduct. Indeed, a Swiss prosecutor has brought a criminal action against Echeverria arising out of the same facts at issue in this litigation. [76] Given the extensive proceedings in the United States arising out of the Madoff fraud that have affirmed its interests, and Switzerland's interest in policing conduct by its corporations and officers, I find that the fora's relative interests now weigh in favor of Switzerland. As noted in the prior opinion on forum non conveniens, the other factors concerning the fora's relative interests do not weigh heavily in either direction. [77]

*Second,* I previously acknowledged that the interest in "avoiding the difficulties of applying foreign law" [78] does weigh in favor of dismissal. [79] Without conclusively making a decision on applicable law, I

reasoned that it was likely that foreign law would apply because none of the plaintiffs are located in the United States. [80]

Plaintiffs have made no further arguments that would indicate New York law can be applied on a classwide basis. While plaintiffs make a convincing argument that the location of the tort should not be decisive, [81] their arguments do not point in the direction of New York law. Plaintiffs rely on the due diligence efforts conducted in New York to argue that New York law applies. However, this lawsuit involves claims that are conduct-regulating rules, which serve to prevent injuries from occurring. [82] Switzerland has the strongest interest in regulating the conduct of OIS, which issued the alleged misstatements. [83] Accordingly, as I previously ruled, the difficulties of applying foreign law (to adjudicate claims between foreign plaintiffs and mostly foreign defendants) weigh in favor of dismissal. While I previously found that the public interest factors weighed slightly in favor of a foreign forum, now that the federal claims are no longer present and exclusively foreign law will govern, I find that the public interest factors weigh heavily in favor of Switzerland.

### D. Waiver

Plaintiffs argue that defendants' waived their right to raise a forum non conveniens defense. [84] This argument is misplaced.

74. *Id.* at 260.

75. *See In re Optimal U.S. Litig.,* 865 F.Supp.2d 451, 451–53 (S.D.N.Y.2012).

76. *Procedure Pénale n° P/4010/2009 Franck Berlamont c/Manuel Echeverria.*

77. *See Optimal,* 837 F.Supp.2d at 260–61.

78. *Maersk,* 554 F.Supp.2d at 453–54.

79. *See Optimal,* 837 F.Supp.2d at 261–62.

80. *See id.*

81. *See LaSala v. TSB Bank, PLC,* 514 F.Supp.2d 447, 465–66 (S.D.N.Y.2007) (reasoning that situations where misconduct in

one jurisdiction causes injury in another country present a scenario where the locus of the tort might not align with the jurisdiction with the greatest interest).

82. *See Padula v. Lilarn Props. Corp.,* 84 N.Y.2d 519, 522, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (1994).

83. Although Clark did issue misstatements from New York, these misstatements were made in a telephone call to Switzerland.

84. *See* 7/26/12 letter from Javier Bleichmar, plaintiffs' counsel, to the Court.

Plaintiffs' argument is based on a New York forum selection clause in an agreement between Santander Central Hispano Investment Securities ("SCHIS") and OIS. SCHIS was the predecessor to the New York-based Santander subsidiary that employed Clark and the New York analysts who conducted the Madoff diligence. In connection with those services, OIS submitted to jurisdiction in New York. However, this language does not require OIS to submit to jurisdiction in New York for claims arising from investments in Madoff's funds, by investors who were not signatories to the agreement between OIS and SCHIS. Nor is there any indication from the agreement that Optimal U.S. investors were intended third-party beneficiaries. At most, this agreement shows that OIS agreed to litigate disputes, between the Santander subsidiaries concerning diligence efforts, in New York. It does not demonstrate any waiver of defendants' right to raise a forum non conveniens defense in a dispute with Optimal U.S. investors. Nor does it bear on whether New York is the most convenient forum in which to litigate *this* dispute.

## IV. CONCLUSION

For the foregoing reasons, defendants' renewed motion for dismissal on grounds of forum non conveniens is granted. Plaintiffs' motion for class certification and appointment of class representatives and class counsel is denied as moot. The

Clerk of the Court is directed to close these motions [Docket No. 105] [85] and this case.

SO ORDERED.

### *OPINION AND ORDER*

## I. INTRODUCTION [1]

On August 10, 2012, this Court issued an Opinion and Order granting defendants' renewed motion to dismiss for forum non conveniens. On August 28, 2012, plaintiffs moved pursuant to Local Rule 6.3 and Rule 59(e) of the Federal Rules of Civil Procedure for reconsideration of the August 10 Opinion on the grounds that the Court "(1) incorrectly consider[ed] facts occurring after the complaint was filed to diminish the level of deference owed to Plaintiffs' choice of forum; and (2) [found] inconveniences where there were none and overlook[ed] pivotal considerations in its analysis of 'how great would be the inconvenience' for Plaintiffs to restart this case in Switzerland." [2] For the reasons stated below, the motion is denied.

## II. LEGAL STANDARD FOR RECONSIDERATION

■■■■ Motions for reconsideration under Local Civil Rule 6.3 are committed to the sound discretion of the district court. [3] " 'The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or

**85.** Defendants' renewed motion for dismissal based on forum non conveniens was raised in defendants' 7/16/12 letter to the Court requesting a pre-motion conference, which I instructed the parties I would treat as a motion, but was not docketed as a motion.

**1.** Familiarity with prior Opinions, in particular the December 20, 2011 Opinion denying defendants' forum non conveniens motion, and the August 10, 2012 Opinion granting defendants' renewed forum non conveniens motion is assumed. *See In re Optimal U.S.*

*Litig.,* 837 F.Supp.2d 244 (S.D.N.Y.2011) ("December 20 Opinion"); 837 F.Supp.2d 244 ("August 10 Opinion").

**2.** Lead Plaintiffs' Motion for Reconsideration of the Court's Dismissal for Forum Non Conveniens ("Pl. Mem.") at 1.

**3.** *See Patterson v. United States,* No. 04 Civ. 3170, 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006) (citing *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983)).

data that the court overlooked' "[4] and that "might reasonably be expected to alter the conclusion reached by the court."[5] A motion for reconsideration may also be granted to " 'correct a clear error or prevent manifest injustice.' "[6] A motion for reconsideration is not an opportunity to "advance new facts, issues or arguments not previously presented to the Court,"[7] nor is it a substitute for appeal.[8]

## III. APPLICABLE LAW

 A full discussion of the doctrine of forum non conveniens is contained in the August 10 Opinion.[9] Nonetheless, I briefly restate the standard here. Courts may decline to exercise jurisdiction under the doctrine of forum non · conveniens when, weighing "relative advantages and obstacles to fair trial" in the alternative fora, and practical considerations of which forum will "make trial of a case [more] easy, expeditious and inexpensive ... the balance is strongly in favor" of the defendant's request for dismissal in favor of a more convenient forum.[10] In deciding whether to dismiss on this ground, courts in this Circuit undertake a three-step analysis set forth in *Iragorri v. United Technologies Corp.*[11] *First,* courts determine the degree of deference due the plaintiff's choice of forum.[12] *Second,* courts examine whether there is an adequate alternative forum for the dispute.[13] *Third,* courts balance the competing private interests of the parties in the choice of forum, and the public interests of the alternative fora under consideration.[14] "The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable."[15]

## IV. DISCUSSION

 When I first denied dismissal for forum non conveniens, I recognized that "the balance of factors was extremely close."[16] In reaching that decision, along with deference to plaintiffs' choice of forum I credited "the United States' interest in enforcing violations of federal securities law, and the due diligence efforts conducted in New York."[17] While reconsideration of the degree of deference due to plaintiffs'

---

**4.** See *Rafter v. Liddle,* 288 Fed.Appx. 768, 769 (2d Cir.2008) (quoting *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995)). The standards governing motions to alter or amend judgment pursuant to Rule 59(e) and motions for reconsideration or reargument pursuant to Local Rule 6.3 are the same. See *Henderson v. Metropolitan Bank & Trust Co.,* 502 F.Supp.2d 372, 375 (S.D.N.Y.2007)

**5.** *In re BDC 56 LLC,* 330 F.3d 111, 123 (2d Cir.2003) (quotation and citation omitted).

**6.** *RST (2005) Inc. v. Research in Motion Ltd.,* 597 F.Supp.2d 362, 365 (S.D.N.Y.2009) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992)).

**7.** *In re Fosamax Prods. Liab. Litig.,* 815 F.Supp.2d 649, 651 (S.D.N.Y.2011).

**8.** See *Grand Crossing, L.P. v. United States Underwriters Ins. Co.,* No. 03 Civ. 5429, 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008).

**9.** See 886 F.Supp.2d at 301–06.

**10.** *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

**11.** 274 F.3d 65, 73–74 (2d Cir.2001) (en banc).

**12.** *See id.* at 73.

**13.** *Id.* The existence of an adequate alternative forum is not disputed.

**14.** *Id.* at 73–74.

**15.** *Id.* at 74–75.

**16.** August 10 Opinion, 886 F.Supp.2d at 301–03.

**17.** *Id.*

choice of forum was a factor in my ultimate decision to dismiss, it was by no means determinative.[18] In granting defendants' renewed motion for forum non conveniens dismissal, I emphasized that

> plaintiffs' federal securities law claims have been dismissed and the parties have undertaken extensive discovery efforts in Europe. This dispute now concerns claims governed by foreign law under relevant choice-of-law principles, brought by foreign plaintiffs suing mostly foreign defendants based on alleged misstatements made abroad.[19]

I therefore concluded that "the balance of factors ... now point strongly towards dismissal."[20] Plaintiffs have not pointed to any law or newly available facts that warrant reconsideration, nor have they demonstrated that failure to reconsider the August 10 Opinion will inflict a "manifest injustice" upon them.

### A. The Court's Analysis of the Degree of Deference Accorded Plaintiffs' Choice of Forum Does Not Merit Reconsideration

Plaintiffs argue that the Court made a "clear legal error" by "re-weighing the *Iraggori* [sic] convenience factors 'as discovery in this case has progressed,' " to "newly conclude[ ] 'that plaintiffs' choice of forum is entitled to some, but little deference.' "[21] In support of this argument, plaintiffs cite a recent Second Circuit summary order stating that the factors for determining what level of deference to accord a plaintiffs' choice of forum "must be analyzed in reference to ... the time at which the complaint was filed."[22]

Here, the Court did not reevaluate the degree of deference due based on "facts that arose or came to light long after the complaint was filed."[23] Rather, I concluded that "it has become clear that the focus of discovery is in Europe, which weighs against according plaintiffs' choice of forum deference" and "[g]iven that the focus of discovery has not been the United States, I am less inclined to infer that plaintiffs' choice of forum *was* motivated by genuine convenience rather than tactical considerations."[24] In other words, in applying the *Iragorri* rule that "we give greater deference to a plaintiff's forum choice to the extent that it was motivated by legitimate reasons,"[25] I reconsidered the *inferences* I had previously drawn about whether plaintiffs' motivation at the time the Complaint was filed was in fact a "bona fide connection to the United States and to the forum of choice."[26] The factual

---

**18.** *See Rabbi Jacob Joseph School v. Allied Irish Banks, P.L.C.,* No. 11 Civ. 5801, 2012 WL 3746220, at *8 (E.D.N.Y. Aug. 27, 2012) (affording "considerable deference" to plaintiff's chosen forum, but dismissing for forum non conveniens where the balance of public and private interests was "sufficient to overcome the weight afforded to [the plaintiff's] chosen forum.").

**19.** August 10 Opinion, 886 F.Supp.2d at 301–03.

**20.** *Id.*

**21.** Pl. Mem. at 2 (quoting August 10 Opinion).

**22.** *Frederiksson v. HR Textron, Inc.,* 484 Fed. Appx. 610, 611–12, No. 10 Civ. 4406, 2012 WL 2044588, at *1 (2d Cir. Jun. 7, 2012).

**23.** *Id.* (holding that the district court erred by "rel[ying] on the Final Accident Report" which was not released until "well after Appellants filed their complaint" to conclude that "Appellants ignored the significance of the evidence in Finland").

**24.** August 10 Order, 886 F.Supp.2d at 306–07 (emphasis added).

**25.** *Iragorri,* 274 F.3d at 73.

**26.** *Norex Petroleum Ltd. v. Access Indus., Inc.,* 416 F.3d 146, 154 (2d Cir.2005). This conclusion is further justified by the fact that plaintiffs are all foreign—another fact that was clear from the outset.

bases for these reconsidered inferences—that most of the relevant documents and important witnesses were located in Europe—existed and were known as of the filing of the Complaint.[27]

It is implausible that the Second Circuit intended to preclude a district court from reevaluating the extent to which a plaintiff's forum choice was "motivated by legitimate reasons" if it came to light later in the litigation that plaintiffs had initially misrepresented their claims and intentions with respect to discovery for the purpose of litigating in a United States court.[28]

### B. Plaintiffs' Private Interest Arguments Regarding Difficulties of Transferring the Litigation to Switzerland Do Not Merit Reconsideration of the Dismissal

Plaintiffs also argue that the Court incorrectly weighed the convenience to de-fendants of litigating in Switzerland against the inconvenience to plaintiffs of doing so. In support of reconsideration, plaintiffs raise new arguments that the witnesses over whom compulsory process will be gained are not crucial or, in the case of Echevarria, cannot be compelled to testify in Switzerland and reassert the need for testimony from U.S. residents not subject to compulsory process in Switzerland.[29] Plaintiffs also submit, for the first time, projections regarding procedural delays and the costs of translating documents into French.[30]

Plaintiffs' assertions regarding the need to depose U.S. residents, which have not been borne out by the course of discovery thus far,[31] and the inability to obtain testimony from Echeverria in any forum do not merit reconsideration of the conclusion that "private interests in this dispute be-

**27.** The primary newly arisen circumstance referenced in the August 10 Opinion—the dismissal of the federal claims—was not a consideration in my analysis of the first *Iragorri* factor. Rather, this circumstance relates to the third *Iragorri* factor—the weighing of the private/public interests.

**28.** As I noted in the August 10 Opinion, several factors justified a reevaluation of plaintiffs' motivation: as of July 16 a majority of depositions had been noticed or taken in Europe, plaintiffs had resisted sitting for depositions in New York, and the scope of document discovery was focused abroad. *See* 886 F.Supp.2d at 306–07. There is no indication that the focus of discovery in Europe, which was contrary to plaintiffs initial representations, was due to the dismissal of the federal claims.

**29.** Specifically plaintiffs assert that "Mr. Echeverria will not offer any relevant testimony" because he is the subject of a related Swiss criminal action that triggers the right against self-incrimination, and that moving the case to Switzerland will not help secure the testimony of the other three witnesses that defendants identified. *See* Pl. Mem. at 5–6. In contrast they note that moving the case to Switzerland will prevent the parties from ob-

taining testimony from numerous individuals. *See id.* at 6.

**30.** Defendants correctly note that motions for reconsideration are not a vehicle for advancing new arguments, and evidence that was previously available should not be considered for the first time unless failure to do so would cause "manifest injustice." See Def. Mem. at 1 n. 1 (citing *Langsam v. Vallarta Gardens*, No. 08 Civ. 2222, 2009 WL 2252612, at *2 (S.D.N.Y. July 28, 2009) ("Where the movant ... merely ... attempts to advance new facts, the motion for reconsideration must be denied.")). *Accord Henderson*, 502 F.Supp.2d at 379 (considering the impact of a filing fee for the first time on reconsideration where failure to do so "could effect 'a manifest injustice' ").

**31.** As I noted in the August 10 Opinion, as of July 16 a majority of depositions had been noticed or taken in Europe, plaintiffs had resisted sitting for depositions in New York, and the scope of document discovery was focused abroad. *See* 886 F.Supp.2d at 306–07. And as defendants noted, plaintiffs cancelled the depositions of certain of the U.S. witnesses they now claim are vital. *See* Def. Mem. at 6 n. 6.

tween foreign plaintiffs and mainly foreign defendants arising from statements made abroad and based on transactions not governed by U.S. securities law, weigh in favor of a foreign forum."[32] First of all, plaintiffs admit that there is a chance that the criminal case will not proceed against Echevarria, whom they acknowledge is central to their claims and, if it does, that plaintiffs will be able join that case.[33] Moreover, plaintiffs' arguments regarding compulsory process at best demonstrate that there will be difficulties securing witness testimony regardless of which forum the case is in.[34] That there will be inconveniences associated with litigating in Switzerland, just as there were in New York, does not outweigh the other considerations that strongly favor Switzerland as the more appropriate forum for this lawsuit.[35]

Plaintiffs also argue that the Court failed to "analyz[e] the cost, time delays, and linguistic complications imposed upon Plaintiffs by changing both court and country mid-case."[36] To the contrary, I recognized that the delay occasioned and the extensive discovery that has already occurred "would normally weigh against dismissal," but concluded that as "much of that effort was required because of the action's minimal connection to New York," it should not be the basis for maintaining a lawsuit in an otherwise inconvenient forum.[37] While plaintiffs' projections regarding translation costs and delays, submitted for the first time on reconsideration, are of concern, plaintiffs do not argue that they are prohibitive, and, in fact, they may have the positive effect of inspiring the parties to reconsider resolving this dispute out of court.[38] In the absence of evidence that "manifest injustice" will result from requiring plaintiffs to relocate to Switzerland, reconsideration is not warranted.[39]

---

**32.** August 10 Opinion, 886 F.Supp.2d at 309–10.

**33.** *See* Declaration of Titus van Stiphout in Support of Lead Plaintiffs' Motion for Reconsideration of the Court's Dismissal for Forum Non Conveniens ("van Stiphout Decl.") at 3.

**34.** *Accord Anwar v. Fairfield Greenwich Ltd.,* 742 F.Supp.2d 367, 378 (S.D.N.Y.2010) (holding that "the argument [regarding unavailability of certain witnesses in the foreign forum] ignores the other side of the same coin: that this Court's subpoena power could not extend beyond its jurisdiction to compel action by third-party witnesses in [the foreign forum]" and concluding that "this factor does not outweigh the other considerations here strongly showing that Singapore is the more appropriate forum for this lawsuit").

**35.** In light of my conclusions regarding public interest, *see infra* Part III.C, and the limited deference granted to a foreign plaintiff's choice of forum, the balance would still strongly favor the foreign forum.

**36.** Pl. Mem. at 8 (citing August 10 Order).

**37.** August 10 Opinion, 886 F.Supp.2d at 309–10.

**38.** Plaintiffs' declaration regarding proceedings in Switzerland notes that "litigation in Switzerland is preceded by an attempt at conciliation" which may be waived by agreement of the parties if the amount in controversy exceeds CHF 100,000. *See* van Stiphout Decl. at 3. The Declaration also notes that the losing party bears the costs of translation, which may cause both parties to reevaluate the wisdom of proceeding with the litigation. *See* Declaration of Maurice Harari in Support of Defendants' Opposition to Plaintiffs' Motion for Reconsideration of the Court's Dismissal for *Forum Non Conveniens* ¶ 9.

**39.** *Cf. Henderson,* 502 F.Supp.2d at 379 (considering the impact of a filing fee for the first time on reconsideration where failure to do so "could effect 'a manifest injustice' ").

### C. The Absence of a Public Interest in Adjudicating the Case in New York Was a Primary Consideration in Reweighing the Iragorri Factors

Plaintiffs argue that, despite the fact that the connection with New York is significantly diminished, "the public interests do not strongly favor dismissal."[40] This position is plainly unsupported by the weight of authority, which I originally distinguished because of "an interest in federal securities fraud claims arising from New York based conduct."[41] The federal securities claims have since been dismissed and "the role of the New York based conduct is now less substantial."[42] In the absence of countervailing New York interests, the public interests *strongly* favor dismissal.[43] Plaintiffs cite no law or facts to the contrary. In fact, plaintiffs do not take issue with this portion of my opinion in their motion to reconsider. Instead, they cite to a Second Circuit case in which the court found that the need to apply foreign law weighed " 'somewhat … but not significantly' in favor of the foreign forum."[44] I did not hold to the contrary, but merely recognized that the need to apply foreign law was an *additional* factor that favored dismissal.[45] Thus, nothing in plaintiffs'

motion merits reconsideration of the conclusion that the public interests *strongly* favor dismissal.

## V. CONCLUSION

In sum, notwithstanding the costs of relocating to Switzerland mid-litigation, all other signs—that the transactions at issue were foreign, that all parties with the exception of one defendant are foreign, that Swiss law will most likely govern, and that the evidence and witnesses are concentrated in Europe-strongly support dismissal. For the foregoing reasons, plaintiffs' motion to reconsider is denied. The Clerk of the Court is directed to close this motion [Docket Entry # 172] and this case.

SO ORDERED:

---

**40.** Pl. Mem. at 10.

**41.** December 20 Opinion, 837 F.Supp.2d at 260. This Opinion distinguished *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F.Supp.2d 712 (S.D.N.Y.2011) and *In re Banco Santander Sec.-Optimal Litig.*, 732 F.Supp.2d 1305, 1336 (S.D.Fla.2010), *aff'd sub nom. Inversiones Mar Octava Limitada v. Banco Santander S.A.*, 439 Fed.Appx. 840 (11th Cir.2011) (per curiam), which dismissed related cases on forum non conveniens grounds in part because the United States' interest in the litigation had been affirmed in the multiple other litigations, criminal and civil, relating to the Madoff fraud. *See also* August 10 Opinion, 886 F.Supp.2d at 309-10.

**42.** August 10 Opinion, 886 F.Supp.2d at 309-10.

**43.** In my August 10 Opinion, I explained that "[w]hile I previously found that the public interest factors weighed slightly in favor of a foreign forum, now that the federal claims are no longer present and exclusively foreign law will govern, I find that the public interest factors weigh heavily in favor of Switzerland." *Id.*, at 310-11.

**44.** Pl. Mem. at 10 (quoting *Gross v. British Broad. Corp.*, 386 F.3d 224, 233-34 (2d Cir. 2004)). I also note that *Gross* involved a New York plaintiff and is therefore easily distinguishable.

**45.** *See* August 10 Opinion, 886 F.Supp.2d at 310-11.