21-1956-cv
*Wamai v. Indus. Bank of Korea*

### UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of February, two thousand twenty-three.

PRESENT:     PIERRE N. LEVAL,
             DENNY CHIN,
             JOSEPH F. BIANCO,

                *Circuit Judges.*

_____

Winifred Wairimu Wamai, individually and on behalf of the Estate of Adam Titus Wamai, Titus Wamai, Diana Williams, Lloyd Wamai, Angela Wamai, Velma Bonyo, Individually and on behalf of the Estate of Wycliffe Ochieng Bonyo, Dorine Bonyo, Elijah Bonyo Ochieng, Angela Bonyo, Winnie Bonyo, Boniface Chege, Caroline Wanjiru Gichuru, Lucy Gitau, Individually and on behalf of the Estate of Lawrence Ambrose Gitau, Catherine Waithera Gitau, Ernest Gitau, Felister Gitau, Catherine Gitumbu Kamau, Individually and on behalf of the Estate of Joel Gitumbu Kamau, David Kamau, Peter Kamau, Phillip Kamau, Henry Bathazar Kessy, Frederick Kibodya, Flavia Kiyanga, Lucy Kiongo, Individually and on behalf of the Estates of Joseph Kamau Kiongo and Teresia Wairimu Kamau, Alice Kiongo, Jane Kamau, Newton Kamau, Peter Kamau Kiongo, Pauline Kamau, Hannah Wambui, Pauline Kamau Kiongo, Mercy Wairumu Kamau, Daniel Kiongo Kamau, Raphael Kivindyo, Milka Wangari Macharia, Samuel Pussy, Individually and on behalf of the Estate of Rachael Mungasia Pussy, Doreen Pussy, Elsie Pussy,

Andrew Pussy, Michael Ngigi Mworia, John Nduati, Aaron Makau Ndivo, Joyce Mutheu, Priscila Okatch, Individually and on behalf of the Estate of Maurice Okatch Ogalla, Jackline Achieng, Rosemary Anyango Okatch, Samson Ogolla Okatch, Dennis Okatch, Pauline Abdallah, Belinda Akinyi Adikanyo, Faith Kihato, Individually and on behalf of the Estate of Tony Kihato Irungu, Jacqueline Kihato, Steve Kihato, Annah Wangechi, Betty Kagai, Elsie Kagimbi, Josinda Katumba Kamau, Individually and on behalf of the Estate of Vincent Kamau Nyoike, Caroline Wanjuri Kamau, Faith Wanza Kamau, David Kiarie Kiburu, Grace Kimata, Individually and on behalf of the Estate of Francis Watoro Maina, Victor Watoro, Lydia Muriki Mayaka, Individually and on behalf of the Estate of Rachel Wambui Watoro, Nyangoro Mayaka, Doreen Mayaka, Dick Obworo Mayaka, Diana Nyangara, Debra Mayaka, George Magak Mimba, Tibruss Minja, Edward Mwae Muthama, Nicholas Mutiso, Sarah Tikolo, Individually and on behalf of the Estate of Geoffrey Moses Namai, Nigeel Namai, Charles Mwangi Ndibui, Julius Nzivo, Rosemary Olewe, Individually and on behalf of the Estate of Francis Olewe Ochilo, Juliet Olewe, Wendy Olewe, Patrick Okech, Mordechai Thomas Onono, Individually and on behalf of the Estate of Lucy Grace Onono, John Muriuki, Evitta Francis Kwimbere, Mary Ofisi, Joyce Onyango, Individually and on behalf of the Estate of Eric Abur Onyango, Tilda Abur, Barnabas Onyango, Kelesendhia Apondi Onyango, Paul Onyango, Kaka Abubakar Iddi, Charles Mwaka Mulwa, Victor Mpoto, Julius Ogoro, Mary Ndambuki, Individually and on behalf of the Estate of Kimeu Nzioka Nganga, Wellington Oluoma, Jacinta Wahome, Stella Mbugua, Sajjad Gulamaji, Mary Gitonga, Francis Maina Ndibui, Kirumba W'mburu Mukuria, Christant Hiza, Marini Karima, Zephania Mboge, Emily Minayo, Joash Okindo, Rukia Wanjiru Ali, Bernard Mutunga Kaswii, Hosiana Mbaga, Margaret Waithira Ndungo, Samuel Odhiambo Oriaro, Gaudens Thomas Kunambi, Livingstone Busera Madahana, Menelik Kwamia Makonnen, Tobias Oyanda Otieno, Charles Mwirigi Nkanatha, Justina Mdobilu, Gideon Maritim, Belinda Chaka, Clifford Tarimo, James Ndeda, Milly Mikali Amduso, Moses Kinyua, Valerie Nair, Aisha Kambenga, Individually and on behalf of the Estate of Bakari Nyumbu, Jane Kathuka, Individually

and on behalf of the Estate of Geoffrey Kalio, Bernice Ndeti, Dawn Mulu, Tabitha Kalio, Aquilas Kalio, Catherine Kalio, Lilian Kalio, Hussein Ramadhani, Individually and on behalf of the Estate of Ramadhani Mahundi, Charles Mungoma Olambo, Caroline Okech, Enos Nzalwa, Ali Hussein Ali, Individually and on behalf of the Estate of Hindu Omari Idi, Omar Idi, Hamida Idi, Mahamud Omari Idi, Rashid Omar Idi, Fatuma Omar, Kamali Musyoka Kithuva, Individually and on behalf of the Estate of Dominic Musyoka Kithuva, Beatrice Martha Kithuva, Titus Kyalo Musyoka, Benson Malusi Musyoka, Caroline Kasungo Mgali, Monica Wangari Munyori, Nuri Hamisi Sultani, Individually and on behalf of the Estate of Mohamed Abdallah Mnyolya, Nafisa Malik, Grace Makasi Paul, Individually and on behalf of the Estate of Eliya Elisha Paul, Blasio Kubai, Elizabeth Maloba, Individually and on behalf of the Estate of Frederick Maloba, Margaret Maloba, Lewis Maloba, Marlon Maloba, Sharon Maloba, Kenneth Maloba, Edwina Owuor, Individually and on behalf of the Estate of Josiah Owuor, Vincent Owuor, Warren Owuor, Grace Gicho, Individually and on behalf of the Estate of Peter Macharia, Diana Macharia, Ngugi Macharia, Margaret Njoki Ngugi, John Ngugi, Ann Ruguru, David Ngugi, Paul Ngugi, Stanley Ngugi, Lucy Chege, Margaret Gitau, Susan Gitau, Peris Gitumbu, Stacy Waithere, Monicah Kamau, Joan Kamau, Margaret Nzomo, Barbara Muli, Stephen Muli, Lydia Ndivo Makau, Sarah Mbogo, Individually and on behalf of the Estate of Francis Mbogo Njung'e, Misheck Mbogo, Isaac Kariuki Mbogo, Reuben Nyaga Mbogo, Nancy Mbogo, Ephantus Njagi Mbogo, Stephen Njuki Mbogo, Ann Mbogo, Nephat Kimathi Mbogo, Daniel Owiti Oloo, Magdaline Owiti, Benson Bwaku, Beatrice Bwaku, Jotham Godia, Grace Godia, Hannah Ngenda Kamau, Duncan Nyoike Kamau, Christine Mikali Kamau, Ruth Nduta Kamau, Mercy Wanjiru, Stanley Nyoike, Jennifer Njeri, Anthony Njoroge, Simon Ngugi, Michael Ikonye Kiarie, Jane Ikonye Kiarie, Sammy Ndungu Kiarie, Elizabeth Kiato, Charity Kiato, Judy Kiarie, Nancy Mimba Magak, Raphael Peter Munguti, Mary Munguti, Angela Mwongeli Mutiso, Benson Ndegwa, Phoeba Ndegwa, Margaret Mwangi Ndibui, Caroline Ngugi Kamau, Charles Olewe, Phelister Okech, Estate of Phaedra Vrontamitis, Leonidas Vrontamitis, Alexander Vrontamitis, Paul Vrontamitis, Anastasia

3

Gianpoulos, John Ofisi, Katherine Mwaka, Eucabeth Gwaro, Trusha Patel, Pankaj Patel, Mary Mudeche, Michael Ware, Sammy Mwangi, Lucy Mwangi, Joseph Wahome, Solomon Mbugua, Japeth Godia, Merab Godia, Winfred Maina, Jomo Matiko Boke, Selina Boke, Humphrey Kiburu, Jennifer Wambai, Harrison Kimani, Grace Kimani, Elizabeth Muli-Kibue, Hudson Chore, Lydia Nyaboka Otao Okindo, Stanley Kinyua Macharia, Nancy Macharia, Betty Oriaro, Rachel Oyanda Otieno, Hilario Ambrose Fernandes, Catherine Mwangi, Doreen Oport, Philemon Oport, Gerald Bochart, Yvonne Bochart, Leilani Bower, Muraba Chaka, Roselyn Ndeda, James Mukabi, Florence Omori, Individually and on behalf of the Estate of Edwin Omori, Bryan Omori, Jerry Omori, Janathan Okech, Mary Muthoni Ndungu, Individually and on behalf of the Estate of Francis Ndungu Mbugua, Samuel Mbugua Ndungu, Jamleck Gitau Ndungu, John Muiru Ndungu, Edith Njeri, Annastaciah Lucy Boulden, Agnes Wanjiku Ndungu, Faith Maloba, Derrick Maloba, Steven Maloba, Charles Ochola, Rael Ochola, Juliana Onyango, Marita Onyango, Mary Onsongo, Individually and on behalf of the Estate of Evans Onsongo, Enoch Onsongo, Peris Onsongo, Venice Onsongo, Salome Onsongo, Bernard Onsongo, George Onsongo, Edwin Onsongo, Gladys Onsongo, Pinina Onsongo, Irene Kung'u, Belinda Maloba,

*Plaintiffs-Appellants*,

v.                                                              21-1956-cv

Industrial Bank of Korea,

*Defendant-Appellee.*

---

FOR PLAINTIFFS-APPELLANTS:

JEFFREY A. TRAVERS (Michael J. Miller; Steven R. Perles, Perles Law Firm, PC, Washington, DC; Steven W. Pelak, Michael O'Leary, Holland & Hart, LLP, Washington, DC, *on the brief*), The Miller Firm, LLC, Orange, VA.

FOR DEFENDANT-APPELLEE:                    JOSEPH R. PALMORE (Carl H. Loewenson,
                                           Jr., J. Alexander Lawrence, Lena H.
                                           Hughes, Morrison & Foerster LLP, New
                                           York, NY, *on the brief*), Morrison &
                                           Foerster LLP, Washington, DC.

Appeal from the judgment of the United States District Court for the Southern District of New York (Cote, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-appellants appeal from the district court's judgment, entered on July 30, 2021, conditionally dismissing their complaint for *forum non conveniens*. The 323 plaintiffs in this lawsuit are victims, or the representatives of the estates of victims, of the simultaneous terrorist attacks, on August 7, 1998, against the United States embassies in Kenya and Tanzania by al Qaeda. Plaintiffs sued the Islamic Republic of Iran ("Iran") for providing material support to al Qaeda in the terrorist attacks and obtained default judgments against Iran in the United States District Court for the District of Columbia, totaling $5.5 billion in compensatory and punitive damages. Iran has not satisfied these judgments. Plaintiffs, as judgment creditors, filed this lawsuit against defendant-appellee Industrial Bank of Korea ("IBK"), a bank that is headquartered in the Republic of Korea ("Korea") and is majority-owned by the Korean government. In their complaint, plaintiffs principally alleged that IBK fraudulently funneled funds for Iran through financial institutions in the Southern District of New York, including IBK's New York branch, and, in doing so, violated United States sanctions against Iran and deprived plaintiffs of their ability to collect against their judgments. Specifically, plaintiffs sought the following: (1) rescission and turnover of fraudulent conveyances made in violation of N.Y. D.C.L. § 273-a; (2) rescission and turnover of fraudulent conveyances made in violation of N.Y. D.C.L. § 276; (3) turnover of Iranian

5

assets still held at IBK pursuant to C.P.L.R. § 5225; and (4) turnover of Iranian assets held by IBK pursuant to the Terrorism Risk Insurance Act, 28 U.S.C. § 1610.

On July 14, 2021, the district court conditionally granted IBK's motion to dismiss the complaint on the ground of *forum non conveniens*. The district court determined that "plaintiffs' choice of forum is entitled to minimal deference, IBK has shown that Korea is an adequate alternative forum where this litigation may proceed, and relevant private and public interest factors support dismissal." Special App'x at 22. The district court made the dismissal conditional "in order to protect the rights of the plaintiffs and to ensure that their claims may be heard on the merits in Korea." *Id.* at 23. Moreover, pursuant to the district court's instruction, the parties filed an agreement to litigate in Korea, which included a commitment by IBK to accept service in Korea and waive any jurisdictional or statute of limitations defense. Following the filing of that agreement, the district court entered judgment for IBK, and plaintiffs appealed. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## DISCUSSION

"A district court's decision to dismiss by reason of *forum non conveniens* is confided to the sound discretion of the district court, to which substantial deference is given." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)). "Such a decision may be overturned only when we believe that the trial court has clearly abused its discretion." *Id.* "Discretion is abused in the context of *forum non conveniens* when a decision (1) rests either on an error of law or on a clearly erroneous finding of

6

fact, or (2) cannot be located within the range of permissible decisions, or (3) fails to consider all the relevant factors or unreasonably balances those factors." *Id.* (internal citation omitted).

On appeal, plaintiffs argue that the district court misapplied the three-step *forum non conveniens* test established in *Iragorri v. United Technologies Corp.*, 274 F.3d 65 (2d Cir. 2001) (en banc). In exercising its discretion under that test, the district court: (1) "determines the degree of deference properly accorded the plaintiff's choice of forum"; (2) "considers whether the alternative forum proposed by the defendant[] is adequate to adjudicate the parties' dispute"; and (3) "balances the private and public interests implicated in the choice of forum." *Norex Petrol. Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (citing *Iragorri*, 274 F.3d at 73–74). As set forth below, we conclude that the district court properly applied the requisite three-part test in its thorough and well-reasoned opinion and acted within its discretion in concluding that the lawsuit should be conditionally dismissed on the ground of *forum non conveniens*.

## I.       Plaintiffs' Choice of Forum

Plaintiffs first argue that the district court's decision to give "some, albeit minimal, deference" to their choice of forum was an abuse of discretion. Special App'x at 15.

Generally, a plaintiff's choice of forum "is entitled to substantial deference." *Pollux Holding*, 329 F.3d at 70. This is particularly true when plaintiffs choose their "home forum," which is entitled to "the greatest deference." *Norex*, 416 F.3d at 154. As we have explained, the "reason we give deference to a plaintiff's choice of her home forum is because it is presumed to be convenient." *Iragorri*, 274 F.3d at 71 (citing *Piper*, 454 U.S. at 255–56). However, "the plaintiff's forum choice should not be given automatic dispositive weight in determining a forum non conveniens motion." *Overseas Nat'l Airways, Inc. v. Cargolux Airlines Int'l., S.A.*, 712 F.2d 11, 14 (2d Cir. 1983). Instead, "the degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on several relevant considerations." *Iragorri*, 274 F.3d at 71.

7

We have recognized that "[t]he more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice." *Id.* at 71–72. Factors weighing in favor of deference "include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence [in] the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." *Id.* at 72.

In this case, the district court did not abuse its discretion in determining that plaintiffs' choice of forum was "entitled to minimal deference." Special App'x at 12. In conducting its analysis, the district court first observed that the U.S. resident plaintiffs are significantly outnumbered by overseas plaintiffs (namely, 83% of the plaintiffs reside outside the United States) and then concluded that because the vast majority of the plaintiffs are not resident in the United States, "plaintiffs' residence is therefore not convenient to the chosen forum."[1] *Id.* The district

---

[1] To the extent plaintiffs suggest that the presence of *any* U.S. residents among the plaintiffs precludes a district court from giving less deference to the choice of forum even when the overwhelming majority of the plaintiffs reside abroad, we find that argument unpersuasive. We have repeatedly affirmed district courts' application of less deference to the plaintiffs' choice of forum in the *forum non conveniens* analysis where the U.S. resident plaintiffs' lawsuit are outnumbered by non-resident plaintiffs. *See, e.g., Bahgat v. Arab Republic of Egypt*, 631 F. App'x 69, 70 (2d Cir. 2016) (summary order) ("Three of the [four] plaintiffs currently reside in Egypt, and the selection of a U.S. forum by such plaintiffs is entitled to less deference."); *Wilson v. Eckhaus*, 349 F. App'x 649, 651 (2d Cir. 2009) (summary order) ("The district court appropriately considered each plaintiff's connection to the New York forum, reducing the overall deference accorded on the ground that less than half of the plaintiffs are United States residents."); *Overseas Media, Inc. v. Skvortsov*, 277 F. App'x 92, 96–97 (2d Cir. 2008) (summary order) (holding no abuse of discretion in the district court's determination that plaintiffs' choice of forum was entitled to less deference because two of three plaintiffs were residing abroad). We also find unavailing plaintiffs' related argument that the overseas plaintiffs are entitled to great deference notwithstanding their non-U.S. residence because they are U.S. government employees or family members of such employees, and more than 50 are U.S. citizens or permanent residents. If a plaintiff resides in a foreign country, the fact that the plaintiff is a U.S. citizen and/or a U.S. government employee does not automatically entitle the choice of forum in the United States to great deference because, given the plaintiff's residency abroad, it "would be less reasonable to assume the choice of forum is based on convenience." *Iragorri,* 274 F.3d at 73 n.5; *see also U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 752 (7th Cir. 2008) ("Convenience . . . is not a euphemism for nationalism . . .

8

court also weighed other convenience factors in determining that Korea was a more convenient forum, such as the locus of events underlying the lawsuit, the location of evidence, as well as jurisdictional considerations. With respect to events, it observed that plaintiffs' primary allegations that IBK employees conspired to violate U.S. laws and fraudulently convey Iranian funds arose out of conduct that allegedly occurred in Korea. As to the evidence, the district noted that virtually all of the relevant documentary evidence and witnesses are in Korea.[2] Moreover, although the district court acknowledged that certain potential witnesses may have been employed by IBK's branch in New York at the time the alleged events took place, it nonetheless found that, on balance, if "this case proceeds in New York, then, discovery and trial would likely involve an arduous process of securing the appearance of witnesses without the benefit of this Court's subpoena power and transporting witnesses and evidence to the United States." *Id.* at 13. In addition, the district court properly considered that it was "unclear whether IBK is amenable to jurisdiction in New York in this case," *id.*, and that the potential litigation concerning personal and subject matter jurisdiction "in and of itself weighs against deferring to the plaintiffs' choice of forum." *Id.* at 13–14.

---

."). In any event, as discussed *infra*, the residency factor was only one of many discretionary factors in this case that the district court relied upon in attaching minimal deference to plaintiffs' choice of forum.

[2] Plaintiffs contend that the relevant documentary evidence is already possessed in the United States by federal and New York State authorities because of IBK's consent decree with the New York Department of Financial Services, a non-prosecution agreement with the New York State Attorney General's Office, and a deferred prosecution agreement with the U.S. Attorney's Office for the Southern District of New York. Thus, plaintiffs argue that the district court erred in concluding that the documents possessed by these government entities were "not readily available to the parties in this litigation." Special App'x at 13. However, we discern no error in that finding given that plaintiffs have neither sufficiently articulated how the parties would be able to obtain access to that evidence, nor demonstrated that such evidence (if it were obtained) would be co-extensive with the voluminous discovery that likely would be required in this case given the broad nature of the allegations and claims.

Accordingly, on this record, we conclude that the district court acted well within its broad discretion in ascribing minimal deference to plaintiffs' choice in forum after carefully weighing the relevant factors.

## II.     Adequacy of Alternative Forum

Plaintiffs also contend that the district court erred in finding that Korea is an adequate alternative forum.

"An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux*, 329 F.3d at 75 (citing *Piper*, 454 U.S. at 254 n. 22). IBK bears the burden of establishing that an adequate alternative forum exists. *See Wiwa v. Royal Dutch Petrol. Co.*, 226 F.3d 88, 100 (2d Cir. 2000). The law of an alternative forum need not be as favorable to a plaintiff as the plaintiff's chosen forum in order for the forum to be adequate. *Piper*, 454 U.S. at 250–52. A district court should find a forum inadequate due to a difference in law only when the remedy available in the alternative forum is "so clearly inadequate or unsatisfactory that it is no remedy at all." *Id.* at 254. In making foreign law determinations, district courts may "consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1.

Here, the district court conditioned its dismissal on IBK's agreement to accept service in Korea, to submit to the jurisdiction of the Korean courts, and to waive any statute of limitations defenses that may have arisen since the filing of these actions. Shortly following dismissal of the action, the district court endorsed a stipulation entered into by the parties pursuant to which IBK agreed to litigate overseas in accordance with the conditions outlined by the district court. Notwithstanding that stipulation between the parties, plaintiffs contend that the district court erred

10

in concluding that Korea "permits litigation of the subject matter of the dispute." *Norex*, 416 F.3d at 157 (internal quotation marks and citation omitted). Plaintiffs principally argue that IBK has not established that the Korean courts would recognize plaintiffs' underlying judgments against Iran because Korean law does not recognize a terrorism exception to sovereign immunity, and, thus, Iran would be entitled to sovereign immunity.[3] Plaintiffs assert that any conclusion reached by IBK's experts on whether such exception has been established is only speculative in light of a split among the lower Korean courts on this issue.

We discern no abuse of discretion in the district court's analysis. The district court evaluated the competing expert declarations and found that, on balance, IBK's experts convincingly demonstrated that Korean courts, like U.S. courts, are likely to recognize an exception to sovereign immunity for acts of terrorism committed in violation of international law. Indeed, the declarations of Professor Kwang Hyun Suk, IBK's foreign law expert, thoroughly addressed the split among Korean courts—in the context of distinct actions brought against Japan by Korean victims of crimes against humanity committed by the Japanese Empire during the Second World War—regarding whether exceptions to sovereign immunity exist. Although acknowledging that the Korean Supreme Court will have to make a final determination to resolve this split among the lower courts, Professor Suk nonetheless forcefully argued that the high courts have taken a more progressive stance to limit sovereign immunity in cases, like this one, that involve crimes against humanity. Joint App'x at 997–1001. Thus, it was well within the district

---

[3] Plaintiffs also argued that IBK had failed to establish that a Korean court would find that the United States had "international jurisdiction" over the underlying judgments, such that they could be enforced in a Korean court. We disagree. IBK's experts showed that a high court would likely recognize international jurisdiction either based on a theory of "substantial connection" or because of "the need to provide a remedy to Plaintiffs who suffered harm from a special type of tort which involved terrorist attacks targeting the embassies." Joint App'x at 1002–05.

11

court's discretion, after considering all of the expert evidence, to find that "IBK's [expert] analysis of whether Korean courts would recognize the plaintiffs' U.S. judgments.[4]

In short, we conclude that the district court did not abuse its discretion in determining that Korea is an adequate alternative forum for plaintiffs to pursue their claims.

## III.    Private and Public Interests

Finally, the district court did not abuse its discretion in finding that the private and public interest factors favored dismissal.  With respect to the private interest factors, courts "assess 'the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; the possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'"  *Aenergy, S.A. v. Republic of Angola*, 31 F.4th 119, 132–33 (2d Cir. 2022), *cert. denied*, No. 22-463, 2023 WL 124091 (U.S. Jan. 9, 2023), (alteration adopted) (quoting *Iragorri*, 274 F.3d at 73–74).  As to the public interest factors, courts consider the "administrative difficulties associated with court congestion; the unfairness of imposing jury duty on a community with no relation to the litigation; the interest in having localized controversies decided at home; and avoiding difficult problems in conflict of laws and the application of foreign law."  *Id.* at 133 (quoting *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 480 (2d Cir. 2002)).

In determining that private interest factors weigh in favor of litigating in Korea, the district

---

[4]  In addition, the district court noted that "IBK's experts have also pointed out that the conduct alleged by the plaintiffs can potentially subject IBK to liability under several different Korean legal frameworks that may not require recognition of the plaintiffs' judgments in Korea," including "Korean tort law and the Korean law of a creditor's right of revocation."  Special App'x at 17 n.7.  However, the district court did not assess the expert evidence regarding the availability of these additional remedies against IBK because it determined that "IBK has demonstrated that Korean courts are likely to recognize the plaintiffs' U.S. judgments as valid."  *Id.*

court reasonably concluded that "the majority of both the documentary evidence and percipient witnesses in this case is thousands of miles away in Korea," and litigating "in New York under such circumstances would be far from 'easy, expeditious and inexpensive.'" Special App'x at 20 (quoting *Iragorri*, 274 F.3d at 73–74). Similarly, in reasonably determining that the public interest factors also favored dismissal, the district court explained:

> For one, New York has no local interest in deciding this case because this case has almost no connection to New York. The underlying facts giving rise to the plaintiffs' litigation against Iran stem from overseas terrorist attacks, and their U.S. judgments were entered in the District of Columbia. As alleged in the plaintiffs' complaint, most of IBK's conduct exposing it to liability occurred in Korea and other foreign countries. Indeed, the primary connection between the facts of this case and New York seems to be the allegation that IBK passed Iranian funds through correspondent bank accounts in New York. But the coincidental involvement of bank accounts in New York, a global financial hub, is not enough to make this a New York controversy. . . .

> Given the minimal connection between New York and the issues in this case, New York has almost no interest in seeing it decided here, and it makes little sense to burden a New York court and jury with it. Korea, by contrast, has a strong interest in hearing this case, because it involves alleged misconduct by a government-sponsored Korean bank that in large part occurred in Korea.

*Id.* at 20–22 (internal quotation marks and citation omitted). In addition, although "the need to apply foreign law is not alone sufficient to dismiss under the doctrine of forum non conveniens," *R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 169 (2d Cir. 1991), the district court was entitled to consider the possibility that it would be required to apply Korean substantive law to plaintiffs' claims as an additional factor that weighed in favor of dismissal. *See Piper*, 454 U.S. at 251.

Finally, in support of their position, plaintiffs point to the strong U.S. policy interest in, among other things, "regulating the interaction between the U.S. and any Iranian assets and for encouraging victims of terrorism to bring claims against state sponsors of terrorism and to collect on judgments if they prevail" and, in essence, plaintiffs suggest that such policy interests mandate

13

that the district court allow their claims be litigated in the United States. Appellants' Br. at 50. We disagree with any suggestion that the nature of this lawsuit requires a departure from our legal framework for a *forum non conveniens* analysis. Moreover, we emphasize that this lawsuit does not involve claims against a state sponsor of terrorism nor are plaintiffs enforcing U.S. sanctions laws. Although plaintiffs hold judgments against Iran for its support of the 1998 terrorist attacks on the U.S. embassies in Kenya and Tanzania, Iran is not a party to this lawsuit. Instead, plaintiffs, as judgment creditors, are suing a bank, which is majority-owned by the Korean government and headquartered in Korea—for allegedly conspiring to fraudulently convey assets out of the Central Bank of Iran's account in Korea, through transactions initiated in Korea—seeking the turnover of funds that continue to be located in Korea. We nevertheless recognize that, in their capacity as judgment creditors, victims of terrorism and their families have a legitimate and compelling interest in pursuing claims against IBK for its allegedly wrongful conduct that hindered their ability to recover Iranian assets. However, their preference to litigate those claims in a U.S. court is not the only consideration. Where an adequate alternative forum exists, our current *forum non conveniens* framework is fully capable of balancing the interests articulated by plaintiffs with the other important private and public considerations at issue. Here, under the deferential abuse of discretion standard, we find no basis to disturb the district court's determination, under the particular facts of this case, that the private and public interests supported requiring plaintiffs to litigate their claims in the Korean courts.

*       *       *

In sum, we conclude that the district court did not abuse its discretion in conditionally

granting the motion to dismiss on the ground of *forum non conveniens*.[5]

We have considered plaintiffs' remaining arguments and conclude that they are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[5] With respect to the conditional dismissal, plaintiffs argue that the district court erred in not imposing an eighteen-month expiration date, such that plaintiffs could re-file the case in the Southern District of New York if plaintiffs' U.S. judgments against Iran were not recognized as valid and enforceable in Korea within eighteen months of filing the lawsuit in Korea. We again conclude that the district court did not err in rejecting that request because, among other things, it could lead to litigation gamesmanship in the Korean forum and IBK "could be forced to litigate in an inconvenient foreign forum based entirely on factors outside of its control." Special App'x at 25.